## LAURA WALDRON *v.* CAROLINE RITCHINGS.

The statutes of this State allowing married women to carry on any trade or business, have no extra-territorial operation, and are limited in their operation to trade or business carried on in this State; the presumption being, in the absence of proof, that the common law rule, in any particular State, has not been modified.

Hence, where a married woman, a resident of Pennsylvania, was sued in this State for services rendered in Massachusetts, under an agreement made in Pennsylvania, *held* that the plaintiff could not recover without showing that the common law rule as to the disability of married women had been changed in at least one of those States.

Where negotiations for a contract are carried on between two parties living in different States, partly by mail and partly through an agent of one of the parties, the contract is made in the State where it first took effect so as to become of binding obligation upon both parties.

APPEAL by the defendant from a judgment of the Marine Court.

The complaint alleged that the plaintiff, in pursuance of a contract entered into between the parties in the city of New York, rendered two weeks' services, reasonably worth $100, as assistant leading singer in certain operatic performances in the city of Boston, in December, 1867, and that at the time the defendant was a married woman, possessed of a separate estate and property, and carrying on business on her sole and separate account.

The answer admitted that the defendant was a married woman, possessed of a separate estate and property, and was carrying on business on her separate account, but alleged that the plaintiff sang in opera in the city of Boston only on one occasion on trial, with the understanding that if she proved qualified therefor, she would be engaged by the defendant, and that upon such trial the plaintiff failed, and was not engaged for that reason.

It appeared on the trial that the negotiation was conducted by mail between the plaintiff or her father, at New York city, and the defendant or her agent, at Philadelphia, and it was

Waldron v. Ritchings.

thus agreed that plaintiff should go to Philadelphia, and sing once on trial, her salary to commence when she reached that city. The plaintiff sang in Philadelphia, but being ill, the defendant agreed she should have another trial at Boston. The plaintiff sang in Boston once, and not regarding her as a success, the defendant gave her $100, and declined to engage her. The evidence was conflicting, and the jury found a verdict for the full amount claimed. From the judgment thereon the defendant appealed to this court.

*Samuel J. Crooks*, for appellant.

The record shows the defendant at the time of the commencement of the action to have been a non-resident, and a resident of the State of Pennsylvania, and the proofs show the services (if any) to have been rendered in the State of Massachusetts, under an agreement made in the State of Pennsylvania. There was no proof that the defendant had at any time carried on any trade or business on her *sole account*, or that she was at any time possessed of a separate estate *within this State*. Nor was there a particle of evidence of any kind, that the obligation upon which a recovery was had, was incurred with reference to her separate business.

1: The statutes (Laws of 1848–9, 1860–2), enabling a married woman (as such) to carry on business, &c., are local in their application, and do not extend beyond State lines, nor do they remove disabilities or impose obligations, except in the case of such married women as are in a position to receive the benefits bestowed upon them by such statutes, *i. e.*, residents of this State having a separate property or conducting a separate business therein and contracting with reference thereto.

This is apparent from the 8th section of the act of 1860, exempting the husband from liability upon any contract of the wife, made "in or about the carrying on of any trade or business, *under any statute of this State*." (*Savage* v. *O'Neil*, 42 Barb. 374.)

2. If the defendant was conducting a business in another State on her sole account, this would not answer the purpose of the statute, and as matter of proof, was immaterial. There is no presumption that the statutes of this State modifying the common law, have been also enacted in other States. (*Wright* v. *Delafield*, 23 Barb. 498.)

The contract proved in this case, if made in Pennsylvania or Massachusetts, was void at common law, and cannot be enforced by the laws of this State, for this reason, among others, that within the meaning of our statute, it was not a contract with reference to a separate business or estate then being carried on, or situate within this State. (*Young* v. *Gori*, 13 Abbott Pr. 13; *Barton* v. *Beer*, 35 Barb. 78; *Klen* v. *Gibney*, 24 How. Pr. 31; *Yale* v. *Dederer*, 22 N. Y. 450; *Coster* v. *Isaacs*, 16 Abbott Pr. 328; *Baldwin* v. *Kimmel*, *Id*. 353.

*Yard & Furlong*, for respondent.

No proof was offered on the trial to show that the laws of Pennsylvania or Massachusetts in regard to married women, or in action on contract against them differed from our own. If such difference really existed it should have been proven by the appellant. "Foreign laws are regarded as facts, and should be alleged and proved like other facts of which the courts do not take judicial notice. In the absence of such allegations and proofs our courts will presume that the foreign laws are in accordance with our own. The laws of a country to whose court a party appeals for redress, furnish in all cases *prima facie* the rule of decision, and if either party wishes the benefit of a different rule of law, as, for instance, the *lex domicilii, lex loci contractus*, or *lex loci rei sitæ*, he must aver and prove it." (*Munroe* v. *Douglas*, 5 N. Y. 447–452.) There was no such averment or proof in the pleadings or on the trial of the case at bar. Therefore the question cannot be raised here.

Waldron v. Ritchings.

By the Court.*—Daly, Ch. J.—The recovery in this case was for two weeks' services by the plaintiff in Boston as a member of an operatic troupe, called the Richings' Opera Company, of which the defendant was the manager, and for the plaintiff's expenses in returning to New York, amounting in the whole to $116.

The defendant is a married woman, and admits in her answer that she is possessed of a separate estate and property, and that she was and is carrying on business upon her separate account; the business, as appears by the evidence, being the proprietorship and management of the operatic troupe or company which bears her name. The plaintiff is a resident of New York, the defendant of Philadelphia, and the action has been brought against the defendant as a non-resident, by attachment.

The plaintiff being in New York and the defendant in Philadelphia, a negotiation was commenced by the defendant's agent for the engagement of the plaintiff to appear in the leading female characters in three specified operas, at $50 a week, together with traveling expenses; and after various letters had passed between the defendant's agent, the defendant herself and the plaintiff's father, it was agreed that the plaintiff should go to Philadelphia, and make her *debut* in one of the operas, and if, to use the language of the defendant, she did not fail in the estimation of the public and the press, that she was to be assured of an engagement upon the terms above stated. The plaintiff accordingly relinquished an engagement which she had in the Academy of Music, in Brooklyn, went to Philadelphia, and appeared in one of the parts designated.

She was laboring under the disadvantage of a recent sickness, but the impression which she produced was not, it would seem, regarded as unfavorable, and a further trial in the same character was determined upon to be made at Boston, whither the troupe proceeded immediately afterwards.

The second trial was accordingly made in Boston, and in

* Present—Daly, Ch. J., Loew and Van Brunt, JJ.

respect to the result of it, there is a direct conflict in the evidence; the plaintiff and her father testifying that she was very well received, and the defendant and the defendant's agent, that her performance was a failure; that there was a very general expression of disappointment among the audiences, the opinion being freely expressed that the opera represented had failed through the incompetency of the young lady who had appeared in the leading female character.

Regarding the trial as unfavorable, the defendant's agent notified the plaintiff's father that the defendant would not engage his daughter, but the father insisted that she had succeeded, and that the defendant was bound to engage her.

She had been paid $50 for her hotel expenses in Philadelphia on her *debut* and $50 for her first week whilst there, to which was added $50, covering the week of her appearance in Boston, making in all $150, and as she refused to be discharged, she remained three weeks in Boston, for the two latter of which she recovered in this action, at the stipulated cost, $50 a week.

The point taken upon this appeal is that the defendant, being a married woman and a resident of the State of Pennsylvania, was incapable of binding herself by contract, and that the assumed obligation upon which she was sued was nugatory and void. This was not an action to charge her estate in equity, nor could such an action have been maintained in the Marine Court. It was an action for a breach of contract, in which judgment was recovered against her the same as if she was a *femme sole*. (*Barton* v. *Beer*, 35 Barb. 81.)

At common law, a married woman was incapable of binding herself by contract.

Such was the law of this State, until the passage of our enabling statute, and we must presume, until the contrary appears, that the same law exists in other States in respect to the relation of husband and wife, that existed here before the passage of these statutes. *Savage* v. *O'Neil*, 42 Barb. 378; *Abell* v. *Douglas*, 4 Denio, 309; *Wright* v. *Delafield*, 23 Barb. 498.)

By our enabling statutes (4 Edm. Gen. Statutes of N. Y.,

p. 516, §§ 2, 8), married women are allowed to carry on any trade or business, and to bargain or contract in or about carrying it on.

The business here referred to is, by the words of the statute, defined to be one carried on under any statute of this State, very clearly indicating that it is one to be carried on within the limits of the State, for our statutes have no extra territorial operation, and our legislation upon such matters is necessarily confined to our own State. Nor can we entertain any presumption that the common law has been modified by legislation in other States as it has been in this (*Wright* v. *Delafield*, 23 Barb. 498), the only presumption, in the absence of proof of what the law is in any particular State, being the general one before referred to.

In the absence of proof to the contrary, then, we must presume that the defendant was incapable, by the law of Pennsylvania, of binding herself by such a contract, and that if the action had been brought against her there, where she resides, it could not have been maintained; and we must presume, also, that if it had been brought in the State of Massachusetts, the State in which the services were rendered for which the plaintiff has recovered, the same result would have followed. Can it be maintained against her in this State? It was held, in *Savage* v. *O'Neil* (42 Barb. 378), that a married woman claiming the benefit of the acts of 1848 and 1849, must show that she was a resident of this State at a time, and under circumstances, to entitle her to such a benefit, and if the same construction is to be applied to the acts subsequently passed, then the operation of the enabling statute is confined to married women who are residents of the State; for if married women who are non-residents are precluded from the benefits which these statutes confer, it necessarily follows that they cannot be subject to the obligations which arise from the enjoyment of the benefits.

It appears to me that the construction put upon the acts of 1848 and 1849 is equally applicable to the acts of 1860 and 1862, for the whole design of this legislation appears to have been for the benefit of married women in this State.

This is indicated by the clause in the first section of the act of 1860, which declares that " that which a woman, *married in this State*, owns at the time of her marriage, shall remain her sole and separate property ; " as well as by. the preceding clause, " the real and personal property which a married woman *now* owns, &c., &c. ; " and the clause in the eighth section which exempts her husband from all liability for bargains or contracts made by her in respect to her separate property, or which is made " in and about the carrying on of any trade or business *under any statute of this State.*" This latter provision, as I have before said, indicates very clearly, that the authority to carry on any trade or business conferred by the preceding second section of the same act, means a trade or business carried on by her in this State, and not in States or countries where she is precluded, by reason of her coverture, from binding herself by contract, and that the whole of this legislation was intended only for the benefit of married women in this State who were residents here when these enabling statutes were passed, or who might afterwards become residents within our territorial limits.

This construction is a very simple one, and is easily carried out. The contract of a married woman domiciled here, made in a case authorized by our laws, would be upheld in States and countries where married women are precluded by reason of their coverture from entering into contracts, unless there is some positive municipal regulation to the contrary, the validity of a contract, or the capacity of a person to make it, depending upon the laws of the place where it is made. If valid there, it is, by the general law of nations, held valid everywhere (Story on Conflict of Law, § 64 ; 2 Kent's Com., 457, 458, 459, § 39).

But to hold, as a consequence of our enabling statute, so that married women domiciled in States and countries where they are incapable of contracting, may carry on business here, or make contracts which will be enforced in this State, would give rise to infinite difficulties.

Chancellor Kent, in noticing the exception to the general rule of the *lex loci*, that a contract made under our government and to be performed under another, is to be governed by the

law of the country where it is to be performed, remarks that this exception is "more embarrassed than any other branch of the subject by distinctions and jarring decisions." Difficulties of this character, but infinitely greater in degree, would be the inevitable consequence of holding that married women who are non-residents of this State are entitled to all the benefits of our enabling statutes and held to all the obligations incident to the enjoyment of such benefits. This view of the law would be decisive of this case, as the defendant, when this contract was entered into as well as when the action was brought, was a resident of Pennsylvania.

But there is another objection to the recovery of equal force. The plaintiff's counsel assumes that the contract was made in this State. In this I think he is mistaken. The plaintiff was a resident here, and the negotiation for the engagement was begun here, but the contract in fact was made in Philadelphia. Where negotiations for a contract are carried on between two parties living in different States, as in this case, partly by the interchange of letters and partly by the oral communications of an agent of one of the parties, the contract is made in the State or place where it first took effect so as to become of binding obligation upon both parties. Now, it appears from the letters that were interchanged, that the engagement of the plaintiff depended upon the result of what the defendant calls in her letter, a "trial performance to test;" in the language of the defendant, "the plaintiff's capabilities as a *prima donna* in the troop." If the plaintiff did not fail, to pursue the language of this letter, in the estimation of the public and the press, she was assured of her engagement. The letters of the plaintiff's father further show that she went on to Philadelphia with this understanding, the language of his letter of the 10th of November, 1867, being, "My daughter has no objection to the terms you offer." A night was fixed for her *debut* in that city, in a character selected for her by the defendant, and, as appears by the letter of the defendant's agent, her salary was to commence on her arrival in Philadelphia.

The defendant knew of the plaintiff as a singer only by

reputation.   She had never heard her, and hence this condition, that her capabilities should be tested by a trial performance.

If in this trial she failed in the estimation of the public and the press, the defendant was not bound to engage her.   If she succeeded, then the contract took effect, and she was engaged as a member of the troupe for the residue of the operatic season. This is a matter in respect to which there was no conflict whatever in the evidence, and as there was to be no engagement unless the trial proved successful, none was entered into until the trial took place.   The defendant was not altogether satisfied with the result of it; but assuming that the plaintiff and her father are right, and that she did not fail in the estimation of the public and the press, and that upon the occasion she fully came up to the test which the defendant required, and that the defendant, if competent to contract, was bound thereafter to employ her for the residue of the theatrical season, and pay her the stipulated reward of $50 per week, then that obligation, if any, arose in Philadelphia, where all the parties then were, on the 28th November, 1867, the day of the trial performance.   If I am correct in this conclusion, then no contract was made in New York.

If the defendant had been under no disability as a married woman, and was competent to contract, her obligation to engage the plaintiff and to pay her the stipulated salary, would have taken effect in the State of Pennsylvania and not in the State of New York, and the validity or invalidity of the contract, or rather her legal capacity to make it, would depend not upon the law of New York but of Pennsylvania.

It is a general rule that the validity of a contract is to be decided by the law of the place where it is made, unless it is to be performed at another place, the doctrine of the common law being that the *lex loci contractus* is to govern, a rule that extends to and embraces the capacity of persons to contract. (Story on Conflict of Laws, §§ 241, 242 ; *Thompson* v. *Ketchum*, 8 Johns. 189 ; *Robinson* v. *Bland*, 2 Burr. 1077.)

The contract in this case was not only made in Philadelphia, but the performance of it was to begin at that place, and to be continued at Boston, in the State of Massachusetts.   It may be

inferred that it was the understanding, from the nature of such an engagement, that the plaintiff was to perform in this city if the defendant brought her troupe here, and it appears that the troupe did come here, after they had been in Boston, and there is some evidence to show that they performed here during that season, but it is not very material, as the plaintiff's recovery was for services rendered whilst she was in Boston.

The contract was made in Philadelphia, the performance of it commenced there and was continued in Massachusetts, and in neither of these States, we must presume, is such a contract of any validity.

It is a broad principle, qualified by some few exceptions, that a contract void in its exception at the place where it is made, cannot be enforced in the tribunals of another State or country. (Story on Conflict of Laws, §§ 64, 241, 242, 243.) " If a married woman," says Story (§ 64), is disabled by the law of her domicil from entering into a contract, the transaction will be held invalid and a nullity in every other country ; " and the defendant being incapable, as we must presume, by the law of Pennsylvania, the place of her domicil, from entering into such a contract, it cannot be enforced against her here, so that upon both grounds, (1) That the defendant was and is a non-resident of this State, and therefore not within the operation of our enabling statutes ; and (2) That the contract was nugatory and void in the State where it was entered into, this judgment should be reversed.

Judgment reversed.