William Graham et al., Appellants, *v.* The First National Bank of Norfolk et al., Respondents.

Where a married woman is the owner of stock, of a bank located in a State other than that in which she and her husband are domiciled, the effect of payment, by the bank to her husband, of dividends declared upon her shares of stock, is to be determined by the law of the place where the bank is located, not by the law of the owner's domicile.

E., a married woman domiciled with her husband in Maryland, was the owner of certain shares of stock of a Virginia bank ; in the latter State the rule of the common law as to the relations of husband and wife prevails. The husband was cashier of two Maryland banks, in both of which he was largely interested, and of which he was the controlling agent ; with these banks the Virginia bank had accounts kept in the name of the husband as cashier ; by his direction or with his assent various dividends declared upon said shares of stock were paid to said banks or credited in their accounts and allowed them on settlement. In an action by assignees of the wife to recover the dividends, *held,* that the evidence justified a finding of payment of the dividends to the husband; and that such payment was good as against the wife or her assignees and discharged defendant's liability.

(Argued February 11, 1881 ; decided March 1, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made March 8, 1880, which affirmed a judgment in favor of defendants, entered upon the report of a referee. (Reported below, 20 Hun, 325.)

This action was brought by plaintiffs, as assignees of Eliza A. Graham, to recover certain dividends declared by defendant,

The First National Bank of Norfolk, on shares of its stock standing in the name of said assignor. The defense was payment.

The following facts among others were found by the referee.

Said defendant was organized under the National Banking Act and was located and doing business at Norfolk, Virginia. At its organization, and prior to January, 1865, one James Graham subscribed and paid for (whether by and out of the funds of Mrs. Eliza A. Graham, his wife, does not appear) one hundred and ninety-six shares of the capital stock of said bank, and directed the certificate thereof to be issued in the name of Mrs. Eliza A. Graham, his wife. On or about June 8, 1865, the certificate of said shares was, by the direction of said James Graham, delivered to the plaintiffs as security for a loan then and there made by them to said James Graham; but said shares were never transferred to the plaintiffs on the books of said bank, nor does it appear that said bank ever had any notice of such pledging, or delivery of said stock to the plaintiffs, nor does it appear that said certificate was ever assigned in writing to the plaintiffs, or that the power of attorney and assignment printed on the back (which was the usual form) was ever signed or executed by said Eliza A. Graham, or by said James Graham. Plaintiffs held (as aforesaid) said certificate and stock from June 8, 1865, until on or about September 5, 1866, at which last-named date it was delivered to said bank, and became its property. While the plaintiffs held said certificate as above-mentioned, said bank declared three dividends, as follows: On or about January 1, 1866, a dividend of ten per cent; on or about April 1, 1866, a dividend of thirty per cent; on or about July 1, 1866, a dividend of five per cent. Said bank paid said thirty per cent, in cash to James Graham. The dividend of ten per cent and the one of five per cent were, by the direction, or with the approval of said James Graham, credited on an account of 'James Graham, cashier,' and went to reduce and pay an indebtedness which the Farmers and Merchants' Bank of Elkton, Maryland, or the Elkton National Bank, owed said

First National Bank of Norfolk, Virginia. Said James Graham and his wife, at the times in question, were domiciled in, and residents of, the State of Maryland, by the laws of which State a married woman has the right to the sole and separate use and control of her property. At said times the common law of England prevailed in Virginia, by which law the husband could lawfully reduce to possession during his lifetime the choses in action of his wife, and receive, receipt for, discharge, and acquit for the same. On September 24, 1866, Mrs. Graham, at the request of the plaintiffs, and without any consideration being paid to her, executed an instrument in writing, by its terms assigning to them all claims against defendant, The First National Bank.

*Malcolm Campbell* for appellants. The mere entry of a credit on the books of the First National Bank of Norfolk, in favor of the Elkton National Bank, cannot, under any recognized rule of law, be regarded as a payment, either to Eliza A. Graham or her husband, of the dividends in question. (*Watervliet Bk.* v. *White*, 1 Den. 608; *Highland Bk.* v. *Dubois*, 5 id. 558; *Beckwith* v. *Union Bk.*, 9 N. Y. 211.) National banks cannot acquire a lien on their own stock held by persons who are their debtors, even by provisions to that effect in their own articles and by-laws. (*Bullard* v. *The Bank*, 18 Wall. 589; *Bank* v. *Lanier*, 11 id. 369.) The same principle prevents their acquiring a lien on the dividends. (*Ehle* v. *Chittenango Bk.*, 24 N. Y. 548.) The assignment of claim by Mrs. Graham to the plaintiffs was a perfectly valid transfer by the law of her domicile. (*Barton* v. *Burton*, 32 Md. 214; *Whitridge* v. *Barry*, 42 id. 40; *Trader* v. *Lowe*, 45 id. 1; *Barry* v. *Equit. Life Ass. Society*, 59 N. Y. 587; *Stoneman* v. *Erie R. R. Co.*, 52 id. 429.) To sustain the plea of payment, even if actual payment had been proved, it was necessary for the defendants to show that such payment was made in good faith, and without notice of the plaintiffs' rights as the actual holders of the stock. (*McNeil* v. *Tenth National Bk.*, 46 N. Y. 332.) The law of Maryland, the domicile of James

Graham and his wife, is the law properly applicable to this case, and under that law payment to the husband would not be binding on the wife. (Wharton on Conflict of Laws, §§ 118, 121, 331a; *Le Breton* v. *Miles*, 8 Paige, 261; *Parsons* v. *Lyman*, 20 N. Y. 112; *Hoyt* v. *Commissioners of Taxes*, 23 id. 224; *Bonati* v. *Welsch*, 24 id. 151; *Hill* v. *Pine River Bk.*, 45 N H. 300; *Peterson* v. *Chemical Bk.*, 32 N. Y. 21; *Lee* v. *Selleck*, 33 id. 657; *Loney* v. *Penniman*, 43 Md. 130; *Slaybacker* v. *Bk. of Gettysburg*, 10 Penn. St. 373.) Even the exercise of control by him over the stock does not amount to a reduction to possession of the dividends, and such reduction must be actual, not constructive. (*Harcum* v. *Hadnall*, 14 Gratt. 382, 383; *Searing* v. *Searing*, 9 Exch. 283.)

*Francis C. Barlow* for respondents. When the dividends were declared, a contract arose to pay them to the person legally entitled to receive them, which was made in Virginia, and was performed there. (*Scott* v. *R. R. Co.*, 52 Barb. 45, 69; *Hager* v. *Union Nat. Bank*, 63 Me. 509, 512, 513; *King* v. *R. R. Co.*, 5 Dutch. [N. J.] 504; *State* v. *R. R. Co.*, 6 Gill, 363, 387; *Phila. R. R. Co.* v. *Hickman*, 28 Penn. St. 329; Story on Confl. of Laws, §§ 347, 361; *Bank of Washington* v. *Triplett*, 1 Pet. 25, 34; *Bowen* v. *Newell*, 13 N. Y. 290.) A defense or discharge, good by the law of the place where the contract is made or to be performed, is to be held of equal validity in every other place where the question may come to be litigated. (Story on Confl. of Laws, §§ 331, 332; 2 Kent's Com. [12th ed.] 459; *Harrison* v. *Edwards*, 12 Vt. 648 *Hicks* v. *Brown*, 12 Johns. 142.) In respect to acts done in any country, the capacity or incapacity of the person is to be determined by the laws of that country. (*Miliken* v. *Pratt*, 125 Mass. 374; 2 Pars. on Cont. [6th ed.] 573, 575, note; 2 Kent's Com. 458, 459; *Male* v. *Roberts*, 3 Esp. 163; *Thompson* v. *Ketcham*, 8 Johns. 190; *Polydore* v. *Prince*, 1 Ware, 410, 417, 418, 419; *Huey's Appeal*, 1 Grant's Penn. Cas. 51; *Pearl* v. *Hansborough*, 9 Hemp. [Tenn.] 426.) The transfer of the certificate of stock did not carry the three dividends in

question, which had been previously declared. *Leroy* v. *Globe Ins. Co.,* 2 Ed. Ch. 651, 670, 671; *King* v. *R. R. Co.,* 5 Dutch. [N. J.] 504, 505, 506.) The assignment by Mrs. Graham, on September 24, 1866, was inoperative, because her husband did not join in it. (*Schindel* v. *Schindel,* 12 Md. 294, 312, 313, 521, 524; *Hall* v. *Eccleston,* 37 id. 519; *Whittridge* v. *Barry,* 42 id. 152.) Our married women's acts only apply to women who are married in or are resident in this State. (*Savage* v. *O'Neill,* 42 Barb. 374; *Ritchings* v. *Waldron,* 3 Daly, 288, 293.) A suit for dividends only lies upon a previous demand, and such demand must be made at the office of the corporation. (*Scott* v. *R. R. Co.,* 52 Barb. 45, 69; *Hager* v. *Union Nat. Bank,* 63 Me. 509, 512, 513; *King* v. *Paterson R. R. Co.,* 5 Dutch. [N. J.] 504; *State* v. *R. R. Co.,* 6 Gill, 363, 367; *Phila. R. R. Co.* v. *Hickman,* 28 Penn. St. 320.) Declarations of an agent do not bind the principal, unless they are a part of the *res gestæ.* (*Baptist Church* v. *Ins. Co.,* 23 How. 458, 450; *S. C.,* 28 N. Y. 153–160; *Luby* v. *R. R. Co.,* 14 id. 131–133; *Card* v. *R. R. Co.,* 50 Barb. 44; *Bank* v. *Stewart,* 37 Me. 519.) The collecting of dividends on stock is a reducing to possession of the dividends, though not of the stock. (*Burr* v. *Sherwood,* 3 Brad. 85; *Hart, Admr. of Ann Hart,* v. *Stephens,* 6 Ad. & Ell. [N. S.] 937.) An assignment of a chose in action for a valuable consideration is as much a reduction to possession of it as receiving payment of it. (*Westervelt* v. *Gregg,* 12 N. Y. 205; 2 Atk. 207, 208; Schouler's Dom. Rel. 121; 2 Kent [12th ed.], 135.) James Graham had a right to collect these dividends, and his declaration that he had received them would be admissible, just as his written receipt would be. (*Van Keuren* v. *Calkins,* 66 N. Y. 81; *Woodruff* v. *Cook,* 25 Barb. 505.)

FINCH, J. The ownership of one hundred and ninety-six shares of stock, which stood upon the books of the Norfolk Bank, in the name of Eliza A. Graham, must be deemed vested in her, whether the purchase-price was paid by her or by her husband, and notwithstanding the evident control of it, for his own pur-

poses, by the latter. No creditors of the husband intervene to affect the question, and, as between Mrs. Graham and the bank, her right as owner must be admitted. The dividends declared during such ownership belonged to and were payable to her; and, assuming for the present that her assignment to plaintiffs was effective to transfer such right to them, there remain for discussion only the two questions: whether the Norfolk Bank did, in fact, pay the dividends sued for to the husband of Mrs. Graham; and whether, by such payment to him, the liability of the bank to her was discharged. The referee has found that such payments were, in fact, made to James Graham, the husband. At the time of these transactions he appears to have been the cashier of the Elkton National Bank, and of the Farmers and Merchants' Bank, of Elkton, in both of which he was largely interested, and the principal and controlling agent, and both of which banks were situate in the State of Maryland, in which State he and his wife resided. The evidence tends to prove that the dividends in question were, in fact, paid to James Graham, cashier, and, therefore, to the Elkton or Farmers and Merchants' Bank. Two of the dividends are proved to have been so paid, with his assent and by his direction given at the time, and one of them with his subsequent approval and ratification. The larger dividend of the three was paid by the delivery, to the Elkton Bank; of the amount in its own bills, and the others by a credit of their respective sums to Graham, as cashier. While it is claimed that, at the date of these credits, there was nothing due from the Elkton Bank to the Bank of Norfolk, and, therefore, no debt upon which the credit could apply, it is yet uncertain, upon the evidence, how the accounts actually stood, and the credit to Graham, as cashier, by his direction, or with his assent and approval, at a time when he conceded the existence of a large indebtedness which he was interested to reduce, was a good payment to him, and an application of the debt of the bank to his wife to the liability of one or both of the Elkton banks, upon which the respective parties appear to have acted by a settlement between the banks, and the benefit of which, as

against the Elkton banks, Graham must be presumed to have had. While the facts are not free from difficulty, a careful examination has satisfied us that there was sufficient evidence to warrant the finding of the referee, and to make it conclusive on this appeal.

The question of law, however, remains, whether the payment by the bank to James Graham was a good payment to his wife in whose name the stock stood upon the books of the bank. The Norfolk Bank was located and transacted business in the State of Virginia. It is proved that in that State the common law prevails as it respects the relation of husband and wife, and that within that jurisdiction the husband has the absolute right to reduce to his own possession, and use for his own benefit, the personal property of the wife. The contract out of which grew the right to the dividends was both made and to be performed in Virginia, and if the payment by the Bank of Norfolk to James Graham is to be tested and measured by the law of that State, it is conceded to have been good and an effective discharge of the liability to the wife. It is denied, however, that the law of Virginia applies, and it is argued that the law of Maryland, the *lex domicilii*, governs and controls the capacity of the parties to receive payment, and the duty of the bank in making it. The general subject of a conflict between the law of the domicile and that of the place of contract has been fully discussed by Story and Wharton in their respective treatises. (Story on Conflict of Laws, § 374 *et seq.*; Wharton, § 393, etc.) Whatever is useful in the learning of the continental jurists, or the decisions of the English courts, has been made tributary to conclusions which we may safely follow where, at least, they are in harmony with the ruling of our own tribunals. It must, then, be granted that movables or personal property, by a fiction of the law, are deemed attached to the person of the owner, and so, present at his domicile, whatever their actual situation may be. The law of the domicile, therefore, naturally governs their transfer by the owner, and their disposition and distribution in case of his death. So far the authorities substantially agree, differing only in the reasons upon which the rule is founded, and by

which it is to be justified. When, however, the question passes beyond the disposition of the personal property by the party, or the act of the law, within the jurisdiction of the domicile, and busies itself with the inherent character of the property, and of the contracts which both create and constitute it, elements of discord arise, and the authorities are not easily to be reconciled. It is readily seen that the inherent character of the contract must usually be the product of the jurisdiction in which it originates, and hence it follows, and has been justly held, that the construction, nature and effect of a contract are to be determined by the *lex loci contractus.* (Story on Conflict of Laws, § 321.) But no such question is here. There is no dispute about the construction of the contract to pay dividends. All are agreed upon that. There is no trouble as to the nature of the contract or its effect. Its validity, and the duty of payment to the stockholders, is conceded on all sides. The real question is over the performance of the contract, or its discharge by payment; and that involves the capacity of the husband to receive and discharge the debt, represented by the dividends, *jure mariti.* On the one hand it is argued that this question of capacity, of the rights and powers flowing from the marriage relation, is dependent upon the law of the domicile, and utterly unaffected by the foreign law, and the former must, therefore, dictate and measure the authority and power of the husband and the right of the wife. That is, in general, true as between themselves, and relatively to each other. It does not follow that it is true as between them and a debtor in another State, whose contract was made there, and is there to be performed. Such a fact introduces a new element into the problem. It would scarcely be endurable if a railroad or insurance company declaring dividends in this State should be bound to pay stockholders in other States according to the foreign laws, and in accordance with different and varying codes. Observing the evil result we must remember that, in a case like the present, it is a legal fiction which attaches the property to the domicile, and the actual fact may be otherwise. Judge Comstock, in *Hoyt* v. *The*

*Commissioners of Taxes* (23 N. Y. 228), well says, "that the fiction or maxim, *mobilia personam sequuntur*, is by no means of universal application. Like other fictions it has its special uses. It may be resorted to when convenience and justice so require. In other circumstances the truth and not the fiction affords, as it plainly ought to afford, the rule of action." And Judge STORY says that the legal fiction "yields whenever it is necessary for the purposes of justice, that the actual *situs* of the thing should be examined." (Confl. of Laws, § 550.) And hence has been very steadily sustained the general rule that a contract made in one State and to be performed there is governed by the law of that State, and the further rule, which is a logical result, that a defense or discharge, good by the law of the place where the contract is made or to be performed, is to be held, in most cases, of equal validity elsewhere. (Story on Confl. of Laws, § 331; *Thompson* v. *Ketcham,* 8 Johns. 189; *Bartsch* v. *Atwater,* 1 Conn. 409; *Smith* v. *Smith,* 2 Johns. 235; *Hicks* v. *Brown,* 12 id. 142; *Sherrill* v. *Hopkins,* 1 Cow. 103; *Peck* v. *Hibbard,* 26 Vt. 702; *Bowen* v. *Newell,* 13 N. Y. 290; *Cutler* v. *Wright,* 22 id. 472; *Waldron* v. *Ritchings,* 3 Daly, 288; *Jewell* v. *Wright,* 30 N. Y. 259; *Willitts* v. *Waite,* 25 id. 577.) In these cases the fiction yields to the fact; the *situs* attached theoretically to the person of the owner, and, therefore, to his domicile surrenders to the actual *situs* where justice and convenience demand it. The illustrations are various, but founded upon a common reason and justification. For the purpose of taxation the actual *situs* controls and the fiction which carries the personal property to the domicile of the owner is disregarded. As to days of grace affecting the maturity of a contract and determining when it becomes due, the *lex loci* is applied. The defense of infancy is to be sustained or denied according to the rule of the place of contract and performance. So, also, as to the disability of coverture, and the rate and legality of interest. And even an assignment, *in invitum*, compelled by the local law, will transfer property in another State where suitors in the courts of the latter are not thereby prejudiced. These rulings and others of the like character have been modified and moulded in their

application by the influence of varied circumstances, but concur in the general principle upon which the *lex loci* has been applied. The point pressed here is that while it controls the construction and validity of the contract it does not settle the capacity of the non-resident parties. But to found a ruling upon such a test would involve us in an ambiguity. Capacity may affect the power of transfer and the direction and details of distribution. In that respect it is often shaped and settled by the law of the domicile. But it also affects the validity of a contract and the mode and manner of its dissolution or discharge. In that respect it is generally governed by the law of the place of contract. Story concludes, after a full and learned review of the insuperable difficulties which attend an effort to extend the capacity or incapacity created by the law of the place of domicile to foreign States, that the true rule is that " the capacity, state and condition of persons according to the law of their domicile will generally be regarded as to acts done, rights acquired and contracts made in the place of their domicile, touching property situate therein," but as to acts done, etc., elsewhere the *lex loci contractus* will govern in respect to capacity and condition. We cannot make, therefore, the law of the domicile in and of itself a solvent of the doubts and difficulties likely to arise even as to questions of capacity. In the present case the contract was made in Virginia and to be performed there. The dividends were there declared and payable. They were paid to the husband who could lawfully receive and appropriate them, by the law of Virginia, to his own use and benefit. The payment was, therefore, valid and effectual and discharged the bank from its liability. The rights of the wife after such payment, as between herself and her husband under the law of Maryland, might prove to be a very different question. It is sufficient for the purposes of this case that the payment, which the referee finds was in fact made to the husband, discharged the liability of the bank and furnished a defense to the action.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.