JOHN KENNETH LEVESON Ross and Another, Plaintiffs, *v.* ETHEL ADINE Ross and Others, Defendants.

Supreme Court, New York County, June 19, 1930.

*Miller, Otis & Farr* [*Nathan L. Miller* of counsel], for the plaintiff Hutchison.

*Hughes, Schurman & Dwight* for the plaintiff John Kenneth Leveson Ross.

*Emmet, Marvin & Martin*, for the defendant Ethel Adine Ross.

*Murray, Aldrich & Webb*, for the defendant Equitable Trust Company.

*Bertram F. Willcox*, guardian *ad litem*, for the defendants Pamela Joan Ross, Anne Ross Hodgson and Linda Jane Hodgson.

*Parker & Garrison*, for the defendants James K. M. Ross and Hylda Ross Hodgson.

TOWNLEY, J. These two actions, prosecuted by the trustee in bankruptcy of John Kenneth Leveson Ross, the original plaintiff, seek to set aside a certain agreement of trust made in 1916 by John Kenneth Leveson Ross in favor of his wife, the defendant Ethel

Adine Ross, with remainders to his children and grandchildren who should be living upon the death of his wife. The trustee named in the trust instrument was the defendant Equitable Trust Company of New York. The plaintiff Ross at the time of his marriage was a resident of and domiciled in the city of Montreal, Province of Quebec. Just prior to his marriage, and on January 28, 1902, a marriage settlement agreement was executed in Montreal by the plaintiff Ross and by an attorney authorized to execute same on behalf of Mrs. Ross. This marriage settlement agreement provided, in substance, for the settlement upon Mrs. Ross of a life income from a fund of $125,000 from her husband's estate after his death, with power to Mrs. Ross to make appointment by will to children of the marriage, with provision that in the event Mrs. Ross predeceased her husband without exercising the power of appointment by will the principal was to be divided among the children or their issue in equal shares, and should there be no issue her surviving, then the settlement should lapse. Article 1 of this agreement, so far as material to the question involved in this case, reads as follows: " No community of property shall at any time hereafter subsist between the future consorts notwithstanding the common law of the Province of Quebec, in which they intend to reside, and by the laws of which they shall be governed."

Following the marriage, Mr. and Mrs. Ross for a time were domiciled in Montreal, and while it seems that they abandoned their domicile in Montreal for a time and lived in Nova Scotia, it is undisputed that they resumed their domicile in Montreal some time prior to 1916, and that their matrimonial domicile at the time of the execution of the trust agreement in 1916 was, and still is, in Montreal, in the Province of Quebec.

In 1913 the father of the plaintiff Ross died, leaving a large fortune and a will under which the plaintiff Ross ultimately inherited upwards of $10,000,000, the greater part of which became subject to his control when he became forty years old, which occurred on March 31, 1916. On coming into this fortune he attempted to make a further provision for his wife by the creation of a trust in her favor involving securities of the present value of approximately $1,000,000. After some preliminary negotiations between Ross' secretary and the representatives of the Equitable Trust Company of New York, a trust agreement was prepared which was forwarded to Montreal for execution by Mr. and Mrs. Ross. It was executed by them before the American consul at Montreal on November 25, 1916, and returned to the trust company in New York, which executed it on December 13, 1916. The securities which were the subject of the trust were delivered to the trustee by the agency of the Bank of

Montreal in New York, where in part they were on deposit, and certain other securities were forwarded from Montreal. This trust agreement recites that it was entered into " by and between John Kenneth Leveson Ross, of Montreal, Canada (hereinafter called ' Mr. Ross '), party of the first part; Ethel Adine Ross, of Montreal, Canada, his wife (hereinafter called ' Mrs. Ross '), party of the second part, and The Equitable Trust Company of New York, * * * party of the third part."

The agreement recites: (1) The execution of the marriage settlement agreement on January 28, 1902; (2) " that Mr. Ross has become possessed of ample means and is desirous of making suitable provision for Mrs. Ross *in lieu of the provision in her favor contained in said contract of marriage settlement* and Mrs. Ross is willing to renounce and revoke the provisions of said marriage settlement in her favor and to accept in lieu thereof the provision for her benefit and support hereinafter contained in this agreement." (3) " Whereas Mr. Ross desires to assign, transfer and convey to the trustee personal property more particularly described in Schedule A annexed hereto as a trust fund subject to the provisions hereinafter contained herein."

After the recitals the agreement provides that in consideration of one dollar and other valuable considerations Mrs. Ross " does hereby consent to revoke any and all conditions or provisions for her benefit and support contained in said contract of marriage settlement dated January 28, 1902, and does for herself, her heirs, executors, administrators and assigns, renounce any and all benefits which might accrue to her under the provisions of said marriage settlement." The agreement further provides that in consideration of the sum of one dollar paid to him by the trustee, and other valuable considerations, Mr. Ross " hereby gives, assigns, transfers and sets over unto said trustee all of the securities described in Schedule A hereto annexed, which is made a part hereof." The relevant provisions of the trust are as follows: (1) Pay the income to Mrs. Ross for life. (2) In the event of her death leaving issue of her marriage her surviving, divide the whole of the principal of the trust fund, with all accumulations of interest, into as many portions as there may be children of said marriage her surviving, the issue of any deceased children to take, however, only the share which their parent would otherwise have taken *per stirpes* and not *per capita;* to retain the principal upon the same trust provided in this agreement and to pay the income for the maintenance and support of each of said children during their lifetime, but in no event after they reach twenty-seven years of age, and upon reaching the age of twenty-seven to distribute the principal to such children, and upon their death before twenty-

seven with issue, to distribute the principal to the issue; on the death of any child before twenty-seven without issue to distribute the principal of the trust to the surviving children of Mr. and Mrs. Ross in equal shares or to their issue. If Mrs. Ross should die without issue, to deliver the whole of the principal to Mr. Ross, if living, and if he should not then be living, the principal is to pass as a part of his estate under his will. Following the execution of this trust the trustee administered it according to its terms until May of 1926, the income being forwarded to Mrs. Ross at a stated address in Montreal.

In May of 1926 Ross became involved in financial difficulties which ultimately resulted in his bankruptcy. He was indebted to the Century Trust Company of Baltimore in the sum of upwards of $450,000 on promissory notes signed by himself and one William A. Read, which loan was about to fall due in June, 1926. He was also indebted to the Baltimore Trust Company on a note with Read and one MacNeil for $225,000. At about this time Ross went to Mr. Barclay, an attorney in Montreal, who appeared as one of the defendants' experts on this trial, to discuss the drawing of a will, and in connection therewith informed Barclay of the trust agreement of November 25, 1916. Barclay at once informed Ross that this trust agreement was in violation of the laws of the Province of Quebec and utterly void, both as to life interest and remainder, and wrote his opinion to that effect to the Equitable Trust Company, and on the same day gave an opinion in writing to Mr. Ross to the same effect, both of which were introduced as exhibits on the trial. Armed with this opinion, copies of which were given to his more pressing creditors in Baltimore, Ross procured an extension of the loan for a period of six months by signing an agreement on June 30, 1926, with the Century Trust Company. This agreement recites among other things that "Mr. Ross has been advised by counsel that the said agreement of November 25, 1916, is null and void and of no effect whatever, and that the Canadian bonds deposited by Mr. Ross with the trustee thereunder are the free and absolute property of Mr. Ross. He is further advised by counsel that it is necessary for him to institute proceedings in the proper court in the State of New York to set aside the said agreement and to obtain an order of the court for the delivery of the said Canadian bonds in order that the said trustee may be protected in making delivery of the same." The agreement then goes on to state that Ross has applied for a loan of $463,687, to be secured by stock of the Inter-Ocean Oil Company and by $500,000, the face amount of the Canadian bonds held by the Equitable Trust Company. The Baltimore bank thereupon agreed to make a loan and in consideration thereof Ross agreed to institute

and prosecute to a conclusion such court proceedings as he may be advised by counsel to be necessary to set aside the agreement of November 25, 1916, and, upon obtaining a favorable decision, to deliver to the bankers $500,000 of the Canadian bonds constituting a portion of the trust. At about the same time Mrs. Ross and her two children signed a renunciation of all rights under the trust and consented to have the same treated as null and void. The renunciation and agreement, properly executed, were returned to the Baltimore Trust Company which made the loan evidenced by promissory notes. Ross, in accordance with his agreement with the Baltimore Trust Company, through his counsel, Mr. Barclay, retained the firm of Hughes, Rounds, Schurman & Dwight to bring proceedings to set aside the trust and placed counsel for the Century Trust Company in touch with his New York attorneys who were furnished with copies of the agreement and of the consent by Mrs. Ross.

Thereafter and on January 3, 1927, Mrs. Ross executed a further deed of revocation which was delivered to Mr. Barclay, forwarded to New York counsel, and thereupon the present actions were begun in March, 1927, after formal demand had been made on the trust company for the delivery of the securities which were the subject of the trust. New York counsel were retained by Mr. Barclay at the suggestion of Mr. Ross to appear for Mrs. Ross in the actions. Shortly after January, 1927, Mr. and Mrs. Ross had gone abroad, returning in April of 1927. Upon her return in April, 1927, Mrs. Ross, upon being informed of the pendency of these actions and the fact that counsel had appeared in such actions on her behalf, repudiated the appearance of the attorneys who had been retained to represent her, claimed that her consent to the revocation agreements had been obtained by fraud and consulted other counsel. At a conference held a few days thereafter Ross agreed to discontinue these actions notwithstanding his arrangement with the Baltimore banks, but through some misunderstanding the actions were never, in fact, discontinued.

On May 19, 1927, Mr. Ross made an assignment for the benefit of creditors to a Montreal trust company. In November, 1928, formal bankruptcy was adjudicated in Canada and the plaintiff Hutchinson was appointed trustee. In March, 1929, said trustee moved to intervene as plaintiff in these actions, which was granted upon consent of all parties. In action No. 1 it is claimed that the trust agreement of November 26, 1916, is governed by the laws of the Province of Quebec, the place of the matrimonial domicile of Mr. and Mrs. Ross at the time of its execution, and the law which, by the provisions of the original marriage settlement, it was agreed should

govern their property rights. It is further claimed that this agreement is absolutely void under the laws of Quebec, first, because the attempted release by Mrs. Ross of her rights under the marriage settlement agreement was absolutely void, being in contravention of the laws involving public order.

The Civil Code of the Province of Quebec, section 1265, provides: "After marriage, the marriage covenants contained in the contract cannot be altered (even by the donation of usufruct, which is abolished), nor can the consorts in any other manner confer benefits *inter vivos* upon each other." All the experts agree that the attempted renunciation of the marriage settlement by Mrs. Ross is absolutely void under the laws of Quebec and also agree that the attempted gift by Mr. Ross to his wife, even through the intervention of a trustee, is void as against the express terms of the Quebec statute. The only point upon which the experts do not agree is whether the attempted gifts over to the children of Mr. and Mrs. Ross can be sustained under Quebec law. All of the experts agree that under the law of Quebec a donee *in esse* is essential to support or to constitute a valid gift.

This action, therefore, presents for determination the question whether the law of the Province of Quebec determines the validity of the trust agreement and whether, assuming the provisions of the trust agreement to be subject to the law of Quebec, the attempted gifts to the children can be saved in spite of the admitted invalidity of the attempted revocation of the original marriage settlement and the provision for Mrs. Ross.

Considering the questions in the order in which they have been stated, I am convinced that the law of the Province of Quebec applies and determines the validity and effect of the trust agreement of 1916.

At the time this agreement was executed it is admitted that the matrimonial domicile of Mr. and Mrs. Ross was, and for some time prior thereto had been, in Montreal. In the original marriage settlement agreement they had stated their intention to be governed by the laws of the Province of Quebec, " in which they intend to reside and by the laws of which they wish to be governed." From this it indubitably follows, certainly so long as the matrimonial domicile remained in the Province of Quebec, that it was the agreement and understanding of the parties that all questions respecting the marriage settlement contract and the property rights of the husband and wife between themselves were to be governed by the laws of the Province of Quebec. The trust instrument of 1916 involved a change in that contract and a readjustment of the property rights of Mr. and Mrs. Ross as husband and wife and a change in the rights enforcible against Mr. Ross' estate at his death.

That a contract of this character should be governed by the laws of the matrimonial domicile of the parties seems to be too clear to admit of serious question, particularly in view of the fact that at the time of the marriage, in a basic agreement regulating the property rights between the parties, they had expressly stipulated that that law should govern their future relations. (Goodrich Confl. Laws [1927 ed.], p. 275; Minor Confl. Laws, § 82; Wharton Confl. Laws [3d ed. 1905], pp. 426 et seq.; Story Confl. Laws [8th ed. 1883], § 184, p. 267; note on Conflict of Laws as to Matrimonial Property in 57 L. R. A. 353 [1902] and supplemental note in 29 id. [N. S.] 781 [1910], and the following New York cases: *Decouche* v. *Savetier*, 3 Johns. Ch. 190; *De Barante* v. *Gott*, 6 Barb. 492; *Crosby* v. *Berger*, 3 Edw. Ch. 538; *Le Breton* v. *Miles*, 8 Paige, 261; *Bonati* v. *Welsch*, 24 N. Y. 157; *Matter of Majot*, 199 id. 29.)

New York decisions hold that the essential validity of declarations of trust or transfers on trust of personal property *inter vivos* are governed by the law of the settlor's domicile. (*Townsend* v. *Allen*, 59 Hun, 622; affd., without opinion, 126 N. Y. 646; *Graham* v. *First Nat'l Bank of Norfolk*, 84 id. 393, 399; *Robb* v. *Washington & Jefferson College*, 185 id. 485; *Curtis* v. *Curtis*, 185 App. Div. 391; *Maynard* v. *Farmers' Loan & Trust Co.*, 208 id. 112; affd., without opinion, 238 N. Y. 592.) (See, also, *Liberty Nat. Bank & Trust Co. in New York* v. *New England Investors Shares*, [D. C.] 25 F. [2d] 493.)

In *Graham* v. *Norfolk Nat. Bank* (84 N. Y. 393, 400) the court stated: " This question of capacity, of the rights and powers flowing from the marriage relation, is dependent upon the law of the domicile, and utterly unaffected by the foreign law, and the former must, therefore, dictate and measure the authority and power of the husband and the right of the wife. That is, in general, true as between themselves, and relatively to each other. It does not follow that it is true as between them and a debtor in another State, whose contract was made there, and is there to be performed."

In *Curtis* v. *Curtis* (185 App. Div. 391, 395), SHEARN, J., writing for the court, stated: " There is no question but that if both settlors resided in Plainfield at the time of the execution of the trust, it would be governed by the law of New Jersey. (*Cross* v. *U. S. Trust Co.*, 131 N. Y. 330; *Dammert* v. *Osborn*, 140 id. 30.) "

The defendants attach great significance to the fact, as claimed by them, that the agreement was executed in the city of New York because the last signature attached was that of the Equitable Trust Company, on December 13, 1916, in the city of New York. While the place of execution of an ordinary commercial contract is sometimes considered of importance in determining the law which shall govern, the mere fact that the trust company's signature was attached in the

city of New York is of no significance, in my opinion, in the determination of the questions presented here. The basic agreement involved in this transaction was the agreement between Mr. and Mrs. Ross. The trust company was the mere incidental medium selected by them to carry out the purpose of their agreement.

Considering the right as between Mr. and Mrs. Ross to make the agreement, the place of its execution was Montreal, where they both executed and where as between them it became a contract. Under the law of Quebec, Mrs. Ross, and not the trustee, was the donee. Acceptance by the donee rendered the contract perfect. (Quebec Civ. Code, § 755.) This is not the case of an agreement solely between the donor and the trust company. There were three parties to this agreement — Mr. Ross, Mrs. Ross, and the trust company. As between Mr. and Mrs. Ross the contract was made and a complete meeting of the minds took place at its execution by them in Montreal on November 25, 1916. In fact, at that time the trustee had already by letter agreed to accept the trust created by its agreement and had examined and approved the form of the proposed trust agreement. To allow the mere incidental detail of the trust company signature having been the last affixed to the agreement to control the question of what law should be applied to this contract is to allow form and incidental detail to overcome the substance of the transaction. The determination of the question whether the remainder interests of the children attempted to be created are valid calls for a construction of the language of the trust instrument itself and depends on whether such remainder interests are severable from the void life estate.

In *Matter of Durand* (250 N. Y. 45, 54), Judge CRANE in his opinion said: " In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished." The remainder interests cannot in my opinion survive the admitted illegality of the provisions in favor of Mrs. Ross. The provision against alteration of covenants contained in a marriage settlement agreement or the transfer of property between husband and wife contained in section 1265 of the Civil Code of the Province of Quebec is a regulation involving public order and expressing the public policy of the Province of Quebec. The direct violation of this policy attempted in the provisions for Mrs. Ross taints the entire ' agreement and renders it and all its provisions void. The settlor's main plan and dominant purpose here was primarily to give to his wife the entire income and profits of the trust fund for her life in lieu of the provisions in the marriage settlement agreement of 1902. The attempted trusts for the children were secondary to, and are inseparable from, the invalid primary

trust in favor of Mrs. Ross. In November, 1916, Mr. Ross never had any intention of creating a trust such as would result if the remainders were to be severed from the provisions for Mrs. Ross. Nothing contained in the trust instrument indicates that Mr. Ross intended to create a trust merely to accumulate the income for children then living and after born until they reached the age of twenty-seven. If such result is to be accomplished it can only be by creating by construction a new and substantially different trust instrument which is beyond the power of the court. The remainder interests must also fall under the law of the Province of Quebec because, with the admitted failure of the provisions in favor of Mrs. Ross, there was no person in being at the time of the execution of the trust instrument in whom legal title to the securities could vest. All the experts agree that to constitute a valid gift there must be a donee *in esse* in whom legal title can vest. Under the law of Quebec a trustee does not take legal title as does a trustee under the common law. He is merely a depositary or administrator. (Quebec Civ. Code, art. 981-A; *Omeara* v. *Bennett*, [Privy Council case] L. R. [1922] 1 App. Cas. 80.) No title can vest in the remaindermen because their identity cannot be determined until the death of Mrs. Ross. The claim that legal title was in fact conveyed to the trustee by the language of the trust instrument is equally without merit. In respect to the duties and powers of the trustee named there is nothing out of the ordinary in the language contained in this particular trust instrument, and it fails to contain any express provision lodging title in the trustee.

The defenses urged by the defendant of the Statute of Limitations and of adverse possession cannot be sustained. The attempted trust being in all respects void, the named trustee must hold the entire trust funds on a resulting trust for the benefit of the settlor or for the plaintiff Hutchinson, trustee in bankruptcy, as his successor. The settlor and his successor in interest have a continuing right to compel the trustee to account so long as any portion of the trust funds remain in the possession of the named trustee. Neither on principle or authority can the named trustee assert any title or claim adverse to the settlor or to his successor in interest. (*O'Connor* v. *Gifford*, 117 N. Y. 275; *Bailey* v. *Buffalo Loan, Trust & Safe Deposit Co.*, 213 id. 525.)

The determination of the court that the attempted trust is in all respects void under the laws of the Province of Quebec requires a ruling in accordance with the settled principles of private international law or conflict of laws that the attempted trust be likewise held invalid in all respects in the State of New York. This determination requires a dismissal on the merits of action No. 2. The

parties, however, are entitled to a decision by the court on the matters involved in action No. 2, in order that the record may be complete for the purpose of appeal.

The court considers that the purported deed of revocation of January 3, 1927, was signed by Mrs. Ross under circumstances that render it unenforcible against her in a court of equity. I am convinced that Mr. Ross failed to make a full disclosure to his wife of all the material facts and that she signed the instrument through misrepresentation practiced upon her by her husband. The provisions of the trust instrument attempting to create remainder interests if judged by New York law are illegal and void under section 11 of the Personal Property Law of New York (as amd. by Laws of 1929, chap. 229).

The trust instrument attempts to provide for the suspension of ownership during the minorities of such children as might be born after November 25, 1916, and such a provision destroys the trust for even such of the children as were actually living at the time of the creation of the trust. (*Matter of Horner*, 237 N. Y. 489; *Matter of Durand*, 250 id. 45.)

Accordingly, if the validity of the trust instrument is to be deemed governed by the law of New York, the trust for the life of Mrs. Ross is valid but all the remainder interests are bad.

In regard to the payments of income made by the Equitable Trust Company, the named trustee, prior to the time when the plaintiff Hutchinson, as trustee in bankruptcy, was formally joined as a party plaintiff herein, such payments of income cannot be recovered by said plaintiff either from the Equitable Trust Company or from Mrs. Ross, to whom they were made. The settlor by his acts has acquiesced in such payments and by estoppel such payments must remain unquestioned both by the settlor and by the plaintiff trustee in bankruptcy as his successor. The Equitable Trust Company shall be entitled to receive its agreed compensation for services as the named trustee from the trust funds up to the time of the intervention of the plaintiff trustee herein as a coplaintiff.

In action No. 1, judgment is awarded in favor of plaintiff Hutchinson as trustee in bankruptcy for the relief demanded in the complaint, with costs. In action No. 2, the complaint is dismissed upon the merits, without costs. The plaintiff trustee in bankruptcy shall tax but one bill of costs. Findings passed on. Submit decision and decree on notice.