GEORGE LOWMAN, RESPONDENT, *v.* WILLIAM P. YATES, SURVIVING ADMINISTRATOR OF JOHN PARMENTER, DECEASED, APPELLANT.

*Principal and Surety—Extension of Payment—Fraud.*

An agreement with a principal extending the time of paying the debt, to be such as will discharge the surety, must be such an one as can be enforced; that is, such an one as will prevent the collection of the original demand.

But if such agreement postponing the payment of the original debt be without consideration, or be void by reason of fraud in procuring it, the surety for the original debt will not be thereby discharged.

APPEAL from General Term of Supreme Court, Sixth District.

The action was tried before the Hon. John M. Parker, Justice, and a jury, at the Chemung Circuit, in February, 1865, and was brought upon a bond made by Anson C. Ely, as principal, and John Parmenter, deceased, as surety, dated June 13, 1854.

The condition was that Ely should, on or before July 1, 1855, pay, take up, and deliver to Lowman, two mortgages executed by him, amounting to $10,000, with interest upon them from January 1, 1854.

The defence interposed was that the Plaintiff, without Parmenter's consent, on the 8th day of July, 1859, took from Ely four negotiable promissory notes, to be applied upon the bond, for the payment, in the aggregate, of $6,956.69 of principal, in three, three and one-half, four and five years after date, and endorsed the same upon the bond, and thereby extended the time of payment, and discharged the Defendant as such surety.

It appeared upon the trial that, when the Plaintiff took the notes endorsed upon the bond, Ely represented himself to be worth $75,000, which representation was believed by the Plaintiff, and which induced him to take the notes. Ely also represented, at the same time, that he had paid Plaintiff's account or over-draft, at the Elmira Bank—$1,958.45—which was a part of an endorse-

ment of $2,926, made at the same time when the notes were endorsed, but he had not and never did pay it.

The evidence showed that Ely was not worth the sum of $75,000, but was insolvent, and that he knew it.   Ely never paid the mortgages, and what he did pay was endorsed upon the bond.

The Plaintiff first became acquainted with Ely's circumstances after his death, which took place in the spring of 1861.   Letters of administration were issued to his widow on the 7th day of October, 1861, and this suit was brought on the 29th of October, 1861, against the administrators of Parmenter, who died on the 19th day of July, 1858.

The notes were tendered to the administratrix of Ely before the suit was commenced, and were produced and offered to the Defendant upon the trial.

One of the administrators of Parmenter having died, an order was entered that the action proceed against the survivor.

The Defendant interposed several objections to the introduction of evidence upon the trial, which, so far as material, are stated in the opinion.

The Judge, among other things, charged the jury that, if the Plaintiff took these notes to be applied as payment upon the bond, when paid, he did in fact extend the time of payment, so far as the notes were concerned; but in reference to the residue of the bond, it would not discharge the surety, but it would discharge his liability upon the bond to the amount of the notes ; and the Defendant excepted to this part of said charge.   He also charged : " This obligation, in order to discharge the surety, must be one that may be enforced against the principal, and if he was induced to enter into it by the fraud of the principal, he may take advantage of the fraud, and it would not operate to discharge so much as the notes represented.

" You have therefore to inquire whether those notes were imposed upon the Plaintiff by the fraud of Ely.

" Did Ely represent to Lowman that he was good for the amount of those notes—that he was worth $75,000, and was it then true that he was not good ?

21

" You must find from the evidence that he knew he was not good."

He also charged: "If you find that the notes were not imposed upon Lowman through any fraud on Ely's part, then, to the amount of these notes, the bond has been paid, as against the Defendants.

" It operates to discharge Parmenter from so much of the indebtedness, in consequence of the effect of the notes to extend the payment upon the bond.

" The bond was due when the notes were given; the notes had the effect to extend the bond three, four, and five years. The balance only could have been collected at that time. If, however, these notes were imposed upon the Plaintiff by such fraud as I have explained to you, they do not operate to discharge the Defendant upon the bond, and the Plaintiff is entitled to recover the amount which has not been paid upon the bond, deducting the undisputed payments, amounting, if Plaintiff's over-drafts on the bank were not paid by Ely, to $15,662.28, as sworn to by King.

" In order that the Plaintiff may avail himself of the fraud of Ely, it is further necessary for you to find that he returned the notes, or offered to return them promptly on ascertaining that Ely had defrauded him. I further charge and submit to you, as necessary in order that the Plaintiff may avail himself of the fraud, if there was any, that he must have returned them to Ely, or if he was dead at the time of the discovery of the fraud, to his representatives. You may say whether, if he offered to return them, he did so in a reasonable time.

" If you find that it was not done within such reasonable time, after ascertaining that he was defrauded, he cannot avail himself of the fraud."

The Defendant's counsel excepted to the instructions or statement to the jury, that they might say whether, if Plaintiff offered to return the notes he took of Ely, he did it in a reasonable time.

And he excepted to the instructions to the jury, that they might find that the Plaintiff returned, or offered to return, them in a reasonable time, or that they might find from the evidence

that the notes were returned, or offered to be returned, in such time or manner that Plaintiff might avail himself of Ely's fraud.

He excepted to the part and portion of the charge, and to the statements, that if Plaintiff was induced to enter into the obligation (take the notes) by the fraud of the principal, he may take advantage of the fraud, and that it would not operate to discharge so much as the notes represented. And he excepted to each and every instruction or statement, that if Ely was guilty in procuring or inducing the Plaintiff to take the notes, the sureties were not to any extent discharged by the taking of the notes.

He excepted to the statement in the charge that, "You have therefore to inquire whether these notes were imposed upon the Plaintiff by the fraud of Ely," and also to the instruction that it was material to inquire whether Ely made false representations, or whether he knew them to be false.

He excepted to that part of the charge in which his Honor instructed the jury, that if the notes were not imposed upon Lowman by any fraud on Ely's part, the balance of the amount of the bond, over and above the notes, was due, and could have been enforced against the surety before the notes became due; and to the statement that the balance could have been collected at that time.

The jury found a verdict in favor of the Plaintiff for $15,662.28.

A bill of exceptions was made and ordered to be heard, in the first instance, at the General Term, and the entry of judgment in the meantime suspended.

Upon the case being heard at General Term, a new trial was denied. The Defendant appealed to the Court of Appeals, and the case was submitted on printed points.

*E. H. Benn* for Appellant.

*R. King* for Respondent.

MILLER, J.—The principle is well settled, that where a creditor, by a valid and binding agreement between himself and the principal debtor, without the consent of the surety, extends the time of payment, and thus ties up the hands of the creditor, that the surety

is thereby discharged (Gahn *v.* Niemcewicz, 11 Wend. 312; Cole-mard *v.* Lamb, 15 Wend. 329; Miller *v.* McCan, 7 Paige, 451; Bangs *v.* Strong, 7 Hill, 250; Dorlon *v.* Christie, 39 Barb. 610; 479; Fox *v.* Parker, 44 Barb. 541; Smith *v.* Townsend, 25 N. Y. 479 Billington *v.* Wagonner, 33 N. Y. 32).

The agreement must be one which can be enforced, and of such a character as will prevent the collection of the original demand, to secure which a new obligation was taken.

It must also have a sufficient consideration, so as to prevent the prosecution of the debt by the owner, and to prevent the surety from compelling him to enforce it.

In the case at bar, it was claimed upon the trial, and evidence was introduced to prove, that the Plaintiff was induced to enter into the agreement, and to take notes extending the time of payment, by the fraudulent representations made by the principal debtor, as to his pecuniary circumstances and responsibility.

Fraud vitiates all contracts, and if the notes endorsed upon the bond in suit, and now in question, were received by the Plaintiff by means of the false representations alleged, then there was no valid agreement to extend the time for the payment of the bond, which was binding upon the parties. The fraud which characterized and infected the transaction entirely vitiated the contract, and rendered it utterly illegal and void.

The endorsement upon the bond of the receipt of the notes, as payments, was fruitless and unavailing, and the instrument remained in full force and effect, the same as if they never had been made. The Plaintiff could prosecute the bond, the same as if the notes had never been given, and it would be no defence, under the circumstances, that the principal had, by fraudulent means, obtained an extension of the time of payment.

The principal exceptions taken upon the trial relate to the charge of the Judge, and his refusal to charge as requested, and I will examine those which are now pressed upon our attention.

The Judge, very properly, I think, left it for the jury to determine whether the notes were imposed upon the Plaintiff by

the fraud of Ely, and whether the agreement to take the notes, and to extend the time of payment, was procured fraudulently. It cannot be denied that there was considerable evidence in the case which tended to establish that Ely had falsely represented the situation of his property, and the jury were required to find that these representations were false, and that Ely knew them to be so. Clearly, there was no error in thus presenting the main issue involved in the case to the jury. The charge of the Judge, that the extension of the time of payment would not discharge the surety as to the residue of the bond, beyond the amount of the notes, and all his remarks as to that branch of the case, were, I think, correct and unobjectionable. The taking of the notes for a less amount than the sum due upon the bond could, at most, but operate as a discharge of the surety to the amount of the notes, and left him unaffected as to the remainder.

They were taken only as a conditional payment upon the bond, and to that extent only could they be effective.

If there had been an actual payment of the bond by Ely, to the amount of these notes, it would not have affected the right of action of the Plaintiff against the surety for the remainder of the bond, and the receipt of the notes could have no greater effect than a payment of money.

The theory upon which sureties are discharged is a suspension of their remedy over their right to demand that the creditor should sue the principal (Myers *v.* Welles, 5 Hill, 465). The remedy here could not have been suspended beyond the amount of the notes, and hence there is no good reason why the surety should be discharged beyond that sum, even if a valid agreement had been made.

If any alteration was made in the contract, it was merely to the extent of a payment pro tanto, and there would appear to be no valid and satisfactory reason why the Defendant has a right to claim any benefit beyond that.

As the jury find adversely to the Defendant upon the question of fraud, I do not see how he could have been injured by this portion of the charge.

Nor does any question arise at this time, whether two actions could be maintained upon the bond, the only question to be now determined being as to sustaining the present action.

It was also proper to submit to the jury to determine whether, if the Plaintiff offered to return the notes, he did so in a reasonable time. The Plaintiff was not aware of Ely's insolvency, until after his decease, and there was no one to whom the Plaintiff could tender the notes until an administrator was appointed. They were tendered to the administrator soon after he was appointed, and this action was commenced shortly after the tender was made.

It was probably enough that the tender was made upon the trial (Nichols *v.* Michael, 23 N. Y. 264, 267).

The evidence offered to prove the publication by the administrators of Parmenter, the surety, in 1859, of a notice to creditors to present their claims against the estate, was properly excluded, as it was not material to the issue upon trial, and could have no legitimate bearing upon the case.

It was not offered for the purpose of procuring a certificate according to the provisions of 2 R. S. 90, § 41, and so far as any question of costs is concerned, it would more properly arise upon a motion.

As the evidence was excluded, the request to charge as to the effect of such a notice, was properly refused.

None of the exceptions to the charge of the Judge, or to his refusal to charge, can be sustained, and his rulings in regard to evidence were entirely correct.

The judgment of the Court below should be affirmed.

All affirm.

JOEL TIFFANY,
State Reporter.