## New York Marine Court.

### General Term—December, 1876.

## THE HARLEM BANK against JAMES M. FALCONER, ET AL.

The plaintiffs sued the drawer of a bank check. Their attorney, without consulting the indorsers, gave the drawer, from time to time, ordinary extensions of the time to answer, aggregating about six months in all. During the time thus extended, the drawer paid $275 on account, and then failed in business, leaving the greater part of the check unpaid.

*Held*, that these extensions did not discharge the indorsers, and that they were liable for the unpaid balance. The reasons therefor, stated.

Appeal from an order of the trial term denying a

motion of the defendant and indorser Hopner for a new trial. The action was tried at the March, 1876, term, and a verdict directed for the plaintiffs. The motion for a new trial, which was made upon the minutes of the trial judge, was denied by him, for the reasons stated in the following opinion, filed at the time:

McADAM, J.—The plaintiffs brought this action upon a post-dated check drawn by the defendant John M. Falconer to the order of his co-defendants Hazlett and Marvin. The check, which bears date September 17, 1874, was drawn upon the Produce Bank, and was payable on October 10, 1874. The payees indorsed the check and offered it for discount, which the plaintiffs declined until the payees first procured another indorser whose pecuniary condition proved satisfactory to them. Hopner assumed the responsibility, proved satisfactory, and was accepted, and the discount was made upon the credit of his name. At maturity, the check was protested for non-payment, and the parties properly charged with notice of such default.

The present action was thereupon commenced. Process was served upon Falconer February 24, 1875, and extensions of time to answer the complaint were given to him, aggregating about six months in all. Falconer, the drawer of the check, received this indulgence without consulting the indorser Hopner, who neither consented nor objected thereto. Between February 24, 1875 (when process was served upon Falconer), and December 16, 1875 (when process was served upon Hopner), the plaintiffs collected and received from Falconer $275, as alleged in the defendant Hopner's answer, which sum was credited to the defendant upon the trial. Hopner now claims that the extensions of time to answer given to Falconer, followed by his failure in business, operated in law to discharge him from all liability, as indorser of the check, for the balance due

upon it; and upon this single ground the defendant Hopner rested his defense upon the trial. It is elementary that if the creditor, without the consent of the surety, enter into a binding agreement with the principal debtor to give him further time for payment, the surety will be discharged. Some of the cases hold that this result follows, even though no injury accrued to the debtor, upon the ground that he himself is the fit judge of what is or what is not for his own benefit. It is not, however, every agreement or promise made by the creditor which will have the effect of discharging the surety; nor will the mere inactivity or indulgence of the creditor effect such discharge (McKechnie *v.* Ward, 58 *N. Y.* 541); nor can the surety, even by notice, impose upon the creditor the duty of actual diligence (Wells *v.* Mann, 45 *N. Y.* 327). The plaintiffs were under no legal obligation to sue the drawer of the check; doing so was the voluntary act of the plaintiffs, and resulted in no injury to the indorsers. The extension of time granted to the drawer by the plaintiffs' attorney in the ordinary conduct of the suit, did not discharge the indorser, because the extensions so granted were not of that irrevocable nature which disabled the plaintiffs from turning over the check at once to the indorsers upon payment by them of the amount due upon it, unincumbered by any valid agreement of extensions. The plaintiffs, by the mere payment of fifteen dollars costs, had the right to enter an *ex parte* order effectually discontinuing the action, and in that way nullifying the effect of the extensions of time to answer. This course would have left the sureties free to pursue any remedy they chose to enforce. The sureties made no effort to be subrogated, and rely for their defense entirely upon the courtesy of the plaintiffs' attorney in granting indulgence to the defendants in the form of ordinary extensions of time to answer. The extensions did not prejudice the sureties, and, as

before remarked, did not disable the plaintiffs from
rendering unto the sureties the cause of action freed
from all stipulations preventing its immediate enforce-
ment. The books lay it down as a rule, that the for-
bearance which discharges a surety must be under
some agreement upon consideration which will prevent
the creditor from suing (*Burge on Suretyship*, 1st Am.
ed. 204). The giving of time to a principal debtor was
thus defined by the court of exchequer, in Howell *v.*
Jones (1 *Crompton, M. & R.* 97, 107) : "We think it
means extending the period at which, by the contract
between them, the principal debtor was originally liable
to pay the creditor, and extending it by a new and
valid contract between the creditor and the principal
debtor, to which the surety does not assent." There
are cases holding that binding agreements giving the
principal debtor time after judgment, operate to dis-
charge the sureties (3 *Denio,* 378 ; 10 *Johns.* 587) ;
but these adjudications proceed upon the theory that
the debt, as to the principal debtor, merged in the
judgment, so that as against him the judgment became,
in legal effect, the debt itself, and upon that account
the agreement extending time to pay the judgment
operated as an extension of time to pay the debt, and
thus the cases were brought within the elementary rule
before referred to. The extensions of time to answer
did not bring the case at bar within the rule discharg-
ing sureties, and the verdict for the plaintiffs for the
amount claimed, less the $275 credited as aforesaid,
was properly directed, and the motion for a new trial
must, therefore, be denied.

The general term (ALKER, GOEPP and SHERIDAN, JJ.) affirmed
this order upon the opinion of the trial judge. An agreement with-
out consideration by a creditor, with the principal debtor, enlarging
the time of payment of a note, does not discharge the surety to such
note (Reynolds *v.* Ward, 5 *Wend.* 501). For to operate as a discharge
of the surety, the agreement with the principal must be of such a

character as can be enforced to prevent the collection of the original demand at the time it would have become due (Lowman *v.* Yates, 37 *N. Y.* 601.