\* WILLIAM O. DOUGLASS, RESPONDENT, v. PETER FERRIS, AND ABBIE A. PROUTY, AS EXECUTRIX OF RODNEY SARGENT, DECEASED, APPELLANTS.

*Guardian and ward — dishonest settlement — liability of sureties upon the guardian's bond — notice of the guardian's default — laches — indulgence.*

In 1872 the general guardian of an infant executed a bond with sureties in the ordinary form. In 1879, and soon after reaching majority, the infant and the guardian had a voluntary settlement and accounting, and the guardian paid to the infant the sum found to be due him, part of which payment was made in a security which the guardian knew to be worthless.

In January, 1880, the Surrogate's Court passed the guardian's accounts, and discharged him as such guardian.

In November, 1880, the infant discovered that he had been defrauded by means of the worthless security, rescinded the settlement and at once demanded payment of the amount claimed by him to be still due, which the guardian promised to pay, and on account of which he finally made a partial payment in February, 1882.

In October, 1882, the infant began an action against the guardian, and in February, 1885, recovered judgment for the balance due, from which judgment the guardian appealed to the General Term, where the judgment was affirmed in June, 1885, and thereafter, some time in 1885, the guardian became insolvent.

In October, 1885, the infant brought an action against the sureties upon the bond given by the guardian to recover the sum for which he had obtained the judgment against the guardian.

*Held*, that he was entitled to recover.

That it was the duty of the sureties to see that the guardian accounted honestly with his ward.

That it was not necessary that the ward, in order to hold the sureties, should notify them of the guardian's dishonesty.

That the settlement between the guardian and ward, when the latter became of age, did not release the sureties.

That the time during which his suit against the guardian was pending was no part of the time of which laches could be predicated.

That if the ward waited nearly two years for payment by the guardian, there being no extension of time or release to the guardian, it amounted only to an indulgence to the guardian which did not discharge the sureties. (MAYHAM, J., dissenting.)

APPEAL by the defendants, Peter Ferris, and by Abbie A. Prouty, as executrix of Rodney Sargent, deceased, from a judgment of the

---

\* The decision in this and the following cases in the Third Department (except St. Lawrence Wholesale Grocery Company v. Hobson, decided May 5, 1892) were handed down April 4, 1892.

Supreme Court, entered in the office of the clerk of the county of Clinton on the 15th day of January, 1891, upon a recovery by the plaintiff of $4,714.04 and costs, after a trial at the Clinton Circuit before the court without a jury.

The action was brought to charge the sureties upon the bond of a guardian, who, after a voluntary settlement with his ward, was discharged by the Surrogate's Court January 12, 1880.

The following opinion was delivered by the trial court:

*S. A. Kellogg,* for the plaintiff.

*Richard L. Hand,* for the defendants.

TAPPAN, J. The facts found are contained in the decision, and need not be repeated further than is necessary to state clearly the points involved in the decision.

The bond sued upon is joint and several. Before section 756 of the Code of Civil Procedure was amended September 1, 1877, the death of a joint surety discharged his estate from all liability upon such contract. The bond in suit was given in 1872. The death of Rodney Sargent January 28, 1887, discharged his personal representative from the joint liability of her testator upon such bond. (3 R. S. [5th ed.], 669, § 1; *Getty v. Binsse,* 49 N. Y., 385; *Wood v. Fisk,* 63 id., 245; *Risley v. Brown,* 67 id., 160; *Hauck v. Craighead,* id., 432.)

September 1, 1877, section 756 of the Code of Civil Procedure was amended so as to read, that the estate of a person or party jointly liable upon contract, with others, shall not be discharged by his death, but the court may make an order to bring in the proper representative, when necessary to do so. This amendment did not affect the bond in suit, which had been given before it became the law. No act of the legislature could alter the effect of this bond to the prejudice of either party. The law as it stood when the bond was given, is considered a part of the written condition thereof. (*U. S. v. Price,* 9 How. [U. S.], 83; *Fielden v. Pickersgill,* 6 Blatchf., 524; *Randall v. Sackett,* 77 N. Y., 480; *Smith v. Osborne,* 31 Hun, 390, 392.)

The action was revived under the provisions of section 454, Code of Civil Procedure, which provides that "two or more persons,

severally liable upon the same written instrument, \* \* \* may all or any of them be included as defendants in the same action at the option of the plaintiff." Under this section the plaintiff had the right to join the original defendants in the action; to discontinue the action as to the defendant Gilletta Low, and at the death of Rodney Sargent, to revive the action against the defendant Abbie A. Prouty, as personal representative of said deceased defendant, and to continue the same to judgment against the present defendants, taking a personal judgment against the defendant Peter Ferris, and a judgment to be collected by due course of administration against the defendant Abbie A. Prouty, sole executrix of Rodney Sargent, deceased. (*Churchill* v. *Trapp*, 3 Abb., 306; *Eaton* v. *Alger*, 57 Barb., 179; S. C., on appeal, 47 N. Y., 345; *Hauck* v. *Craighead*, 67 id., 432, 436.)

The condition of the bond in suit is, that Edwin B. Low shall well and faithfully in all things discharge the duty of guardian of the plaintiff, his ward, according to law, and render a just and true account of all moneys and property received by him, and of the application thereof, to and before any court having cognizance thereof, when thereto required.

The case presented by the evidence shows that the guardian, soon after his ward attained his majority, rendered a correct account, showing the true balance remaining in his hands, but did not pay such balance, but, by fraudulent representations, induced his ward to receive in payment a worthless note and mortgage, taking from him a discharge and authority to enter a decree with the surrogate of Essex county; who had appointed the guardian, judicially settling his account and discharging him and his sureties upon the bond in suit.

As the guardian rendered a correct account, showing the true balance, it is insisted by the counsel for the defendants that the fraud committed by the guardian in making the payment was not part of his conduct as guardian, but was the individual fraud of the guardian, and not within the condition of the bond.

The condition that the guardian shall in all things faithfully perform his duty according to law requires him not only to render a correct account, but to actually pay over the balance to the ward when he is entitled to receive it. Any colorable payment made

with counterfeit coin, spurious bills, or checks drawn upon a bank in which there were no funds to pay, or any payment received by the ward because of the fraudulent representations of the guardian, does not operate as payment in fact, and does not discharge the sureties upon the guardian's bond. (*Bank* v. *Buchanan*, 87 Tenn., 32; S. C., 10 Am. S. R., 617, note at p. 619, and cases there cited.)

The undertaking of the surety that the guardian shall actually pay protects the ward against any fraud of the guardian committed in the attempt of the latter to make payment or obtain satisfaction or discharge of the debt due by the guardian, as such, to the ward. Until the guardian had paid the ward the money, or property which was a just equivalent for it, he had not faithfully performed his duty as guardian.

After such payment has once been made the liability of the guardian, as such, and of his sureties ceases. Further dealings of the guardian whereby he defrauds the ward is personal fraud, not involving his conduct as guardian, for which the sureties upon his bond cannot in any manner be made liable. The release and discharge from plaintiff to Edwin B. Low, his guardian, having been declared void for fraud by a court of competent jurisdiction, the liability of the defendants, as sureties upon the bond of the guardian, if not affected by laches, remains the same as though the release had never been given. (*Parr* v. *State* [Md.], 17 Atlantic Rep., 1020; Am. Dig., 1889, 1722.)

The attempted payment by Edwin B. Low, as guardian, to the plaintiff, his ward, and the discharge given therefor, and the decree in the Surrogate's Court based thereon, having been set aside for the fraud of such guardian, and it having been affirmatively adjudged in an action brought in this court by the plaintiff against Edwin B. Low as guardian, that said Low, as such guardian, pay a sum of money to plaintiff, for which he is liable as guardian, such judgment and decree obtained in the manner and under the circumstances detailed in the findings of fact, is evidence against the sureties upon said guardian's bond and is *prima facie* binding upon them. (*Rockfeller* v. *Donnelly*, 8 Cow., 623; *Thayer* v. *Clark*, 48 Barb., 243; *Binsse* v. *Wood*, 37 N. Y., 526; *Gerould* v. *Wilson*, 81 id., 573; *Scofield* v. *Churchill*, 72 id., 565; *Casoni* v. *Jerome*, 58 id., 315; *Harrison* v. *Clark*, 87 id., 572; *Heard* v. *Lodge*, 20 Pick.,

53; S. C., 32 Am. Dec., 197, and note, p. 202; *Parr* v. *State* [Md.], 17 Atlantic Rep., 1020; Am. Dig., 1889, 1722.)

There being no evidence in any manner rebutting the reasonable inference to be drawn from the judgment-roll in that case, it is proof of the fact of the liability of Low as guardian to the plaintiff, and is competent evidence of the guardian's fraud. (*Thomas* v. *Hubbell*, 15 N. Y., 405; *Lee* v. *Clark*, 1 Hill, 56; *Bridgeport Ins. Co.* v. *Wilson*, 34 N. Y., 275; *Conner* v. *Reeves*, 103 id., 527; *Heard* v. *Lodge*, 20 Pick., 53; S. C., 32 Am. D., 197, 202; *Gillett* v. *Wiley*, 126 Ill., 310; S. C., 9 Am. S. R., 587.)

The judgment before mentioned determined that there was a sufficient rescission of the attempted payment with a proper offer to restore the note and mortgage, and the same have always since remained at the disposal of Low, and were ready to be delivered to him at the trial.

The note and mortgage were taken as actual payment, and except for the fraud of Low would have operated as payment of the amount due from him to the plaintiff; as the attempted payment was set aside for fraud it did not operate to extend the time of payment of the original indebtedness.

It does not appear that there was any irregularity in the entry of final judgment in the action between the plaintiff and Low. An irregularity of the kind claimed could only be corrected by proper motion. (*Wright* v. *Nostrand*, 94 N. Y., 32.)

It is insisted by the counsel for the defendants that such laches on the part of the plaintiff are shown that the sureties upon the guardian's bond are released.

The fraud of Edwin B. Low, the guardian, was committed May 14, 1879. It was discovered by plaintiff in November, 1880, and was by him immediately communicated to Low, and the plaintiff then demanded that the transaction respecting the note and mortgage, by which the fraud was committed, and all proceedings which had been taken under the discharge and decree of the surrogate, should be canceled and treated as void, and that said Low, as guardian, pay the $3,200 and interest, for which the note and mortgage had been substituted, to which Low assented and promised to make such payment, and in February paid $800.

In April, 1882, Low transferred his real estate to his wife, and made no further payment upon the amount acknowledged by him to be due to the plaintiff.

In October, 1882, plaintiff commenced the action against Low, his guardian, in which judgment was entered in February, 1885, vacating the attempted payment by the note and mortgage, and setting aside the discharge and the decree of the surrogate based thereon, and giving judgment in favor of the plaintiff against Low for the amount due by him as guardian.

On June 9, 1885, the judgment had been affirmed by the General Term and final judgment was entered. On June 15, 1885, executions on the judgments were issued and returned unsatisfied.

This action was brought October 31, 1885, and then the sureties first became aware of the fraud of Low, and of the proceedings taken by the plaintiff in consequence of such fraud.

On June 27 1885, Low was and since then has been insolvent.

It is fairly to be inferred that the assent of Low and his promise to pay in November, 1880, and afterwards often repeated, and his payment in February, 1882, was the cause of plaintiff's failure to prosecute an action against Low until October, 1882. From that time until the commencement of this suit plaintiff was prosecuting the suit against his guardian to avoid the effects of his fraud, and to put himself in condition to prosecute the sureties, the guardian during all the time unjustly defending and interposing obstacles for delay.

Under the circumstances, did the plaintiff owe any duty to the sureties which he omitted? They undertook, as has been shown, to guard and protect him against the fraudulent conduct of his guardian. He had undertaken to settle with this guardian when he attained his majority and to obtain payment. In the attempt to pay him the guardian had cheated and defrauded him, and in that way had obtained his discharge. Until such payment and discharge had been set aside for the fraud, plaintiff could not call upon the sureties, and he had the right to take the proper proceedings for that purpose; whatever time was necessarily taken for that purpose plaintiff was entitled to. The guardian was not faithfully performing his duty when he committed the fraud, nor was he when he resisted proper legal proceedings to vacate and set aside what he had gained by his fraudulent conduct as guardian.

The delays were caused by the fraudulent and improper conduct of the guardian as such, against which the sureties had undertaken to guard the plaintiff.

The sureties were bound to know that any transaction between plaintiff and Low, by which he defrauded plaintiff in paying over such money, was liable to be set aside for such fraud, and that nothing short of actual payment would release the guardian or his sureties.

It was their duty to protect themselves by such inquiries as to payment as would have put them into possession of the facts. The plaintiff was in the neighborhood and they could have made inquiry of him. Without such inquiry he had no occasion to communicate with the sureties.

The plaintiff having acted reasonably under the existing circumstances, and the delay in calling upon the sureties having been caused by the fraudulent and dishonest conduct of the principal, the guardian who the sureties had undertaken should, as guardian, act honestly and without fraud, such delay does not constitute laches which will discharge the sureties. (*Gillett* v. *Wiley*, 126 Ill., 319 ; S. C., 9 Am. State R., 587, note and cases cited.)

I see no reason why the plaintiff should not recover the cost and expense in undoing the fraud of the principal, and in securing an honest accounting.

Judgment is ordered against the defendants for $3,509.74 and interest thereon from February 16, 1885, to April 8, 1889, and for $193.63 and interest from the same time, and for $72.50 and interest from June 9, 1885, to April 8, 1889, amounting, to the time of trial, to the sum of $4,714.04, said judgment to be entered against the defendant Peter Ferris, personally, and against the defendant Abbie A. Prouty, as sole executrix of Rodney Sargent, deceased, to be paid by due course of administration.

Plaintiff is entitled to costs of this action, with an additional allowance of five per cent upon the amount of the recovery aforesaid.

Judgment is ordered accordingly.

*Richard L. Hand,* for the appellants.

*Royal Corbin,* for the respondent.

HERRICK, J. :

For the reasons set forth in the opinion of Mr. Justice TAPPAN in the court below the judgment appealed from should be affirmed. In addition to, but in harmony with, the views expressed by the trial court, the following suggestions are made : It seems to me that it was not necessary for the plaintiff to notify the sureties of the dishonesty of his guardian in order to hold them to the obligation of their bond. They owed more than a passive duty ; they should see to it that their principal discharged his duty ; if they neglected it they did so at their peril. (*Forester* v. *State*, 46 Md., 154–161 ; *Gillett* v. *Wiley*, 126 Ill., 319, 327, 328.)

A guardian's duty does not end as soon as his ward becomes of age ; he must then make a settlement with his ward, and honestly account and pay over what is coming to him, and the sureties are responsible that he does so. I cannot assent to the idea that because when the ward became of age he has legal capacity to act for himself, that the sureties are no longer responsible for the transactions between himself and his guardian in settling the estate. One of the most important duties the guardian owes to his ward is an honest accounting and settlement with him, and that necessarily cannot take place until he is of age ; and instead of being in any sense released by the transactions of the ward with his guardian, it seems to me it is just the time when, if ever, the sureties owe an active duty to see that their principal acts, as they have bound themselves, he would act, as an honest man.

In my opinion the defendants are in a somewhat different position from an indorser upon a note or a guarantor of a bond, or any surety who merely bonds himself to pay a sum of money or fulfill a contract if his principal does not. Here the sureties guaranty the fidelity and honesty of the guardian ; the obligation is that the principal " shall well and faithfully in all things discharge the duty of guardian." If he fails in that, they are responsible for the damages the ward suffers through that lack of fidelity. It is something more than warranting his pecuniary responsibility, where, if he does not comply with his contract to pay, and the creditor by his delay suffers him to become impecunious so that the sureties cannot collect from him, the creditor by his laches has placed the sureties in a position where they cannot make themselves good. Here, as we have seen,

the bond was for fidelity and honesty. Acting promptly would not have made him honest. Delay has not made him any more dishonest than he was before.

Honesty and fidelity are the main things guaranteed, not pecuniary responsibility. But even upon the ground of delay, I do not see that the defendants have any sufficient reason to be released. The delay caused by the legal proceedings cannot be considered on the question of laches. Laches can only be predicated upon the time that elapsed from the discovery of the fraud until the commencement of the suit against the principal.

No inflexible rule can be laid down as to what constitutes laches; it depends upon the circumstances in each particular case. The evidence in this case is not before us, but it is fairly to be inferred from the facts found, that there were negotiations between the plaintiff and his guardian, and promises to pay by the guardian, so that the plaintiff was kept in constant hope and expectation of a settlement, and a part payment was made.

Plaintiff first became aware of the fraud in November, 1880, and immediately made demands upon his guardian for payment; this was promised, but not fulfilled. In February, 1882, a part payment was made, and no further payment being made, in October, 1882, he commenced his action against his former guardian. I do not think that the delay under all the circumstances constituted laches that would release the defendants.

There was no extension of the guardian's time or valid release of him by the plaintiff, by which the plaintiff was prevented from prosecuting him upon his obligation to make an account; the fraud practiced vitiated the whole proceeding and settlement so that it in no way acted as an extension of time or stay of proceedings. (*Lowman* v. *Yates*, 37 N. Y., 601.)

Mere indulgence or delay by the creditor to prosecute the principal debtor will not release the surety. (*Albany Dutch Church* v. *Vedder*, 14 Wend., 165; *Supervisors* v. *Otis*, 62 N. Y., 88; *Powers* v. *Silberstein*, 108 id., 169; *Howe Machine Co.* v. *Farrington*, 82 id., 121, 131; *Bostwick* v. *Van Voorhis*, 91 id., 353.)

The judgment should be affirmed, with costs and printing disbursements.

PUTNAM, J., concurred.

MAYHAM, P. J. (dissenting):

This action was brought against Peter Ferris and Rodney Sargent, upon a bond executed by them and Gilletta Low as sureties for Edwin B. Low, upon his appointment as the general guardian of the plaintiff, William O. Douglass, by the surrogate of Essex county.

The bond was dated on the 28th of March, 1872, and letters of guardianship were issued to the guardian on the 29th day of March, 1872. The plaintiff arrived at the age of twenty-one years on the 26th day of March, 1879. On the 14th of May, 1879, after becoming twenty-one years of age, the plaintiff and his guardian had a voluntary settlement or accounting and settled and fixed the amount of the guardian's liability to the plaintiff on account of such guardianship at the sum of $4,363.10, and the guardian thereupon paid to the plaintiff the sum of $1,163.10, leaving a balance due from the guardian to the plaintiff of the sum of $3,200; and in settlement or payment of that balance the guardian turned out to the plaintiff the promissory note of his insolvent brother, Charles W. Low, payable to the order of the plaintiff March 1, 1881, with semi-annual interest, and a mortgage on real estate in the State of Illinios executed by Charles W. Low to the plaintiff to secure the payment of the same, which mortgage was falsely and fraudulently represented by the guardian to be good security for the same.

At the time of the consummation of the settlement plaintiff gave to his attorney written authority to appear for him before the surrogate of Essex county and discharge the guardian from all liability on account of such guardianship.

Pursuant to such settlement and authority the guardian and attorney for the plaintiff so authorized and empowered by him, without personal notice to the plaintiff, on the 12th day of January, 1880, appeared before such surrogate and such proceedings were thereupon had, by and before him, that a decree of final judicial settlement and accounting of such guardian's accounts were had, and the surrogate, then and there, among other things, " ordered, adjudged and decreed that the said account be, and the same hereby is, finally settled and allowed as filed and adjusted; and it is further adjudged and decreed that nothing remains in the hands of the said guardian as such, or due from him to said ward." The decree was duly entered of record on that day in the office of the surrogate.

The case shows that the real estate mortgage, given as collateral to the note taken by plaintiff on the settlement, was not adequate security for the note, and that the plaintiff discovered that he had been defrauded in the settlement with his guardian, and that the mortgage and note were not security for the amount found due the plaintiff on that settlement; and the plaintiff in November, 1880, discovered that fact, and in February, 1882, the guardian seems to have conceded that fact, and then paid the plaintiff $800 on account of the $3,200, but failed to pay the balance; and in October of that year the plaintiff commenced an action in the Supreme Court for the same against the guardian alleging the guardianship; the settlement between the plaintiff and guardian after plaintiff became of age; the amount found due from the guardian; the giving of the note and mortgage in satisfaction of the same; the decree of the surrogate thereon discharging the guardian, alleging that the settlement was procured by fraud, and asking that the decree of the surrogate be vacated for fraud, and that the guardian be adjudged to pay the balance found due on the settlement. The defendant demurred to the complaint, and judgment was given for the plaintiff on the demurrer, which was affirmed on appeal and judgment ordered against the guardian for the balance and costs.

To recover that balance and the cost of that litigation the plaintiff brought this action against the sureties on the guardian's bond, and on the trial the plaintiff recovered judgment for the amount, the $3,200 and interest from date of settlement, less the $800 paid by the guardian after that date, and also the plaintiff's expense in the action against the guardian, and the cost of this action, in all $5,555.22.

The first, and, perhaps, most important, question raised by the appellants on this appeal is, whether the sureties upon this bond are not discharged by the settlement of the plaintiff with the guardian after arriving at his majority, and accepting of the guardian, in satisfaction of his claim, the note and mortgage of Charles W. Low, payable nearly two years after the date of such settlement, upon which a decree discharging the guardian was entered by the surrogate.

If the plaintiff, by this settlement, deprived the sureties of any of their legal advantages in protecting themselves from the obligation they assumed as sureties on this bond to their prejudice, it is

difficult to see how he can, in this action, enforce its obligation against them for his own protection and to the prejudice of the sureties.

The capacity of the plaintiff to make a settlement with his guardian after becoming of age cannot be doubted, and it can hardly be claimed that the defendants, by their bond, undertook to protect the plaintiff from the consequences of his improvident dealings with his guardian after he is clothed by law with authority to act for himself, in the absence of any collusion between the sureties and the principal in the bond, unless by its terms the sureties contracted to protect the obligee against the consequences of his acts after arriving at his majority.

The condition of this bond was : " That if the above-bound Edwin B. Low do and shall well and faithfully in all things discharge the duty of guardian to the above-named minor according to law, and render a just and true account of all moneys and property received by him, and of the application thereof and of such guardian, in all respects, to and before any court having cognizance thereof, when thereunto required, then this obligation to be void, otherwise to be and remain in full force and virtue."

The obligation of the guardian was to account for all money and property to and before any court having cognizance thereof, and that course would have afforded a complete protection to the ward, and to the sureties as well, and could, at the time of making this voluntary settlement, have been compelled by the plaintiff or the sureties on this bond.

The making of this voluntary settlement by the plaintiff with his guardian, and the entering of a decree thereunder and in pursuance thereof, while the same was voidable for fraud, bound all the parties until rescinded; and thus suspended the right of the plaintiff and these sureties to take any proceeding in court to compel an accounting by the guardian before the surrogate, as the decree entered in the matter was in that court, until vacated or reversed, a complete bar to any other proceeding in that court for an accounting. (*Sanders* v. *Soutter*, 126 N. Y., 193). This settlement between plaintiff and his guardian was in May, 1879. In November, 1880, plaintiff knew of the alleged fraud, and waited until October, 1882, before he commenced his action against the guardian to set aside the accounting ; and it does not

appear that the defendants were apprised of any alleged fraud in the accounting or in the manner in which the balance found due the plaintiff was paid or secured until September, 1885. During all that time the defendant, so far as this case discloses, had a right to rely upon the recorded decree of this surrogate that the guardian had performed his whole duty and was discharged from all liability to the plaintiff on account of such guardianship. The plaintiff having the power to make this settlement with his guardian, he, and he alone, had the power to rescind it for fraud; and the defendants in this action were powerless and unable to take any steps against their principal in this bond so long as this settlement remained unrevoked. During the interval between the making of this settlement and the rescission or revocation of the same, the guardian, who was the principal in this bond, became insolvent.

I am inclined to the opinion that this voluntary settlement with the guardian by the plaintiff so far affected the rights, powers and privileges of the defendants as sureties on this bond as to release them from all obligations to the plaintiff thereunder.

By this settlement the right of the sureties to pay this balance to the plaintiff and sue the principal was clearly suspended during the period that this settlement and decree remained unrescinded and in force. This was such an interference with the rights of the defendants as sureties on this bond, without their knowledge or notice to them, as to release them from liability to the plaintiff. In *Paine* v. *Jones* (76 N. Y., 278), DANFORTH, J., in discussing this subject, says: " The holder of the security had notice of the deed and its covenants, and was bound by this relation, and under an equitable obligation, to do nothing to affect or alter the rights of the surety." In *Calvo* v. *Davies* (8 Hun, 222) the court says: " The rule is absolute that there shall be no transaction with the principal debtor without acquainting the person who has a part interest in it."

*In Kane* v. *Cortesy et al.* (100 N. Y., 132) it was held that the defendants, sued upon a guaranty upon a bond and mortgage, were released from their obligation upon their guaranty by plaintiff's acceptance of a chattel mortgage as additional security, and agreeing with the mortgagor, without the consent of the guarantors, to extend the time of payment of the bond and mortgage; and although the

chattel mortgage contained the usual danger clause, and authorized the mortgagee to foreclose it in case he deemed himself insecure, yet that did not defeat the operation of the extension of the real estate mortgage; and EARL, J., says (p. 137): "It gave no rights to the defendants as sureties for the debt, and they could not, by virtue of that clause, pay the real estate mortgage and take an assignment thereof and enforce the same before the extended time of payment had arrived; and as the extension of time was thus effectual against the sureties, it discharged them notwithstanding the clause mentioned."

In *Calvo* v. *Davies* (73 N. Y., 216) ANDREWS, J., says: "And the doctrine that a surety is discharged by dealings between the creditor and principal debtor, inconsistent with the rights of the surety, has been applied, although the creditor did not know, in the origin of the transaction, that one of the parties was a surety."

In *Brinagar's Administrator* v. *Phillips* (1 B. Mon., 283) MARSHALL, J., states the rule as follows: "The plain principle to be deduced from these discussions and decisions is, that the surety is released, when, by an arrangement between the creditor and principal debtor, without his consent, his right to compel the creditor to the immediate coercion of the debt from the principal, or what is the same thing, in effect, his right to make immediate payment to the creditor, and in his name and right to coerce payment from the principal debtor, is impaired."

The rule seems universal that when the surety is deprived by the act of the creditors and principal debtor, without his consent, of any right or remedy which he might otherwise have to protect himself from loss, he is thereby discharged from his liability to the creditor; and I find no case where that rule is relaxed by reason of fraud practiced upon the creditor by the principal debtor, when the creditor has voluntarily, and without the consent or connivance of the surety, entered into contracts or speculations with the principal debtor not expressly provided for in the bond, and against which the surety has made no express guaranty.

The contract of a surety being *strictissimi juris*, it cannot be enlarged or changed without his consent. (*McCluskey* v. *Cromwell*, 1 Kernan, 598.) In *Hancock Mutual Life Insurance Company* v. *Lowenberg* (120 N. Y., 44) the court says: "The rule is that a surety is entitled to a strict construction of the bond, under which it is

sought to make him liable, and that it cannot be enlarged by impli-cation to cover anything which was not in contemplation of the parties at the time the bond was executed." (*Bigelow* v. *Benton,* 14 Barb., 123; *Barns* v. *Barrow,* 61 N. Y., 39; *Schwartz* v. *Hyman,* 107 id., 562.) Applying this rule to the case at bar, I do not see how the sureties on this bond can be held as liable for fraud practiced upon the plaintiff in transactions voluntarily entered into by him, not embraced in the provisions of the bond, and against which the bond furnishes no express guarantee.

The appellants also insist that the sureties on this bond are dis-charged by reason of the laches of the plaintiff in disaffirming and repudiating this settlement for fraud after the discovery by him of its existence. If this settlement had not delayed the defendants in enforcing their remedy against the principal, then the defendants could not urge the plaintiff's laches as an excuse for their failure to respond after the default of their principal, the bond would then be a continuous obligation, and the sureties would at any time be liable for default of the principal, until barred by some statute of limitation. But when by the act of the creditor and principal debtor the sureties are delayed or hindered in their ability to protect themselves from loss, then the laches of the creditors to restore them to their original rights would furnish good grounds for their discharge.

In *McMurray* v. *Noyes* (72 N. Y., 523) the guarantor of the mortgage was held to be released by the laches of the holder of the same, in delaying foreclosure for fourteen months after the same became due, when at the time of its maturity the property was good security, but before foreclosure it became worthless by destruction by fire (*Craig* v. *Parkis,* 40 N. Y., 181; *Hancock* v. *Wilson,* 46 Iowa, 352; *Toles* v. *Adee,* 91 N. Y., 562); and it has been held that long acquiescence by a ward in a settlement which was procured by the fraud of his guardian practiced upon him, would relieve the sureties from liability. (*Aaron* v. *Mendel,* 39 Am. Rep., 248.)

If we are right in the above conclusion, then there was no breach of the bond as to the sureties. They had not covenanted to protect the plaintiff against the fraud practiced by Edwin B. Low upon the plaintiff in a transaction between him and Low after he had arrived at full age; and while such fraud might, and did, restore the liability

of Low to the plaintiff growing out of that fraud, it did not, it . seems to us, re-establish the liability of the sureties on his bond, as guardian, under the circumstances of this case, when, as we have seen, the plaintiff by his own act and laches had deprived the defendants of rights which they had, and could have maintained, against their principal, but for the obstruction put in their way by the acts of the plaintiff without their knowledge or consent.

They assumed no such obligation in their bond, and cannot be held liable in this action, unless, as is insisted by the plaintiff, their liability is established in the action by the plaintiff against the guardian to which they were not parties, and in which they were in no way before the court or called upon to defend. In *People* v. *Chalmers* (60 N. Y., 158), CHURCH, Ch. J., says: "It is a familiar rule that sureties can only be charged when the case is brought within the very terms of their contract (5 Hill, 635), and that the obligation of sureties is not to be extended by construction to embrace purposes and objects not contemplated by the parties." It would be going too far, I think, to hold that the sureties, when they signed this bond, had in contemplation the protection of the plaintiff against fraud practiced upon him when he voluntarily undertook to deal with his former guardian after he became of age, and in the eye of the law stood upon an equality with him, especially when for years he carried on a contract with him without their knowledge and authority.

But it is insisted that the defendants cannot now be heard to contest their liability in this action, as the judgment against their principal fixes their liability as sureties on this bond.

The general doctrine is that a decree against the principal liquidates and fixes the amount of his liability and affords *prima facie* evidence of the correctness of that amount in an action against the sureties; but I find no case which goes to the length of holding that the liability of a surety is so fixed that he cannot defend where he has a good and valid defense to his liability upon the bond, especially where he is not a party to the action or proceeding in which the amount of the liability of the principal is settled. In *Annett* v. *Terry* (35 N. Y., 256), the court says: "It is true that the decree is *prima facie* evidence of the amount due from Kerr, and its recovery, on his admission, arising from his default binds the

sureties in the absence of fraud or collusion." But this case does not hold that the sureties are bound as to their liability on the bond, and concluded from making a defense to the same if they have a valid defense thereto. In *Harrison* v. *Clark* (87 N. Y., 575), the court says : " The sureties are bound because, by their contract, they are privy to the proceedings against their principal, and when the principal is concluded, they, in the absence of fraud or collusion, are concluded also." But that case did not arise where the sureties interposed an independent defense to the bond upon the merits. It can hardly be claimed that the defense of forgery of the names of the sureties, or their release by their principal, could not be set up by the persons sued as sureties on the bond when the liability of the principal to the bond had been established in a separate action against him.

In the interlocutory judgment in the action by the plaintiff against his guardian, these defendants were not before the court, and none of the questions raised by them on this trial were or could have been raised on the trial of that demurrer.

The effect of overruling the demurrer in that case was that the allegations of the complaint as to that defendant were true, and judgment, therefore, went against him, establishing, as to him, the truth of the allegations of the complaint.

In *Girvin* v. *Hickman* (21 Hun, 318), cited by the respondent, the court hold that the guardian and ward may settle the account as between themselves, and in that way dispense with an accounting in court, and upon that subject the court uses this language : "An accounting by the guardian serves to show the extent of his liability but it is not conclusive on the sureties. If there is anything wrong about it, they may show it in their own defense." It is true that where nothing has occurred that can operate as a release or discharge of the sureties, they may be deemed bound by a judgment against the principal, because, by their contract, they are deemed privies to the principal. (*Harrison* v. *Clark*, 87 N. Y., 576.) But this rule does not extend to cases where the same would operate as a fraud upon the sureties, or subject them to liabilities from which they have been exonerated by the acts of the obligee in the bond to which they have not assented. In this respect I think this case clearly distinguishable from the case of *Harrison* v. *Clark* (*supra*).

I am, therefore, clearly of the opinion that the judgment in the action against the guardian in this case does not conclude the defendants in this action, if, as we have seen, they were discharged from their liability to the plaintiff by his voluntary acts or omissions after he arrived at his majority.

That action does not assume in terms to adjudicate the liability of these defendants as sureties, and while, as we have seen, it would under certain circumstances, be *prima facie* evidence of the extent of the liability of the sureties on the bond, I do not think that it is binding upon them in this case. There are other questions in the case raised by the appellant, one of which is as to the extent of the liability of the defendant Ferris, and of Prouty as the personal representative of Sargent, if the defendants are liable in this action. But, from the view I have taken, those questions need not be discussed here. For the reason above stated, I think there should be a new trial.

Judgment reversed, new trial granted, costs to abide the event.

Judgment affirmed, with costs.