(21 Misc. Rep. 757.)

## FIFTH NAT. BANK OF CINCINNATI, OHIO, v. WOOLSEY.

(Supreme Court, Trial Term, New York County.   November 29, 1897.)

1. LAWS OF FOREIGN STATE—PRESUMPTION.
    Where, in an action upon a contract made in a foreign state, the law of
    the foreign state upon the subject is not proved, it will be presumed to be
    that prevailing in New York.

2. GUARANTY BY STOCKHOLDERS—CONSTRUCTION.
    Stockholders of a corporation executed an instrument in writing agreeing
    that all paper which the plaintiff bank might discount for the corporation,
    and which remained due and unpaid at a certain time, not exceeding $10,000
    in the aggregate, would be paid by them.   The corporation had an active
    account with the bank, and during the life of the guaranty handled $64,000
    of the corporation's paper, having $10,500 thereof at the expiration of the
    time limited.   Held, that the guaranty was a continuing one to the extent of
    $10,000, and was not exhausted by the loan of the first $10,000.

3. BILLS AND NOTES—DAYS OF GRACE.
    A note which falls due December 1, 1892, "fixed," falls due on that date
    "without grace."

4. SAME—ON DEMAND.
    A note payable "on demand after date" becomes due on the day of its
    date, without grace, and may be prosecuted immediately;   the suit being suf-
    ficient demand.

5. SAME—ON DEMAND AFTER DATE.
    Where a demand note is given long after its date, the words "after date"
    do not extend the right to sue.

6. SAME—NEW NOTE SECURITY FOR OLD.
    When plaintiff had some past-due notes, and took a new note for the
    aggregate amount payable "on demand after date," the new note being
    dated back, and did not surrender the old notes, the effect was not to ex-
    tend the time for payment, nor to discharge the old notes;   the new note
    being security merely for the old ones.

7. SUBROGATION OF CO-DEFENDANTS—CONTRIBUTION.
    Co-defendants who pay that proportion of the debt to which they are liable
    to contribute belonging to one of their number become subrogated to the
    creditor's rights, and can prosecute the recreant contributor in the creditor's
    name.

Action by the Fifth National Bank of Cincinnati, Ohio, against
Kate T. Woolsey.   Judgment for plaintiff.

Oudin & Oakley, for plaintiff.
R. H. Griffin, for defendant.

McADAM, J.   The defendant and nine other stockholders of the
R. M. Bishop Cigar Company, an Ohio corporation, executed an
instrument in writing, in which, after setting forth the amount of
stock held by them respectively, they recited that the company de-
sired to borrow money from the plaintiff, and that the plaintiff had
refused to make the loans unless their payment was acceptably
guarantied;   whereupon the said stockholders jointly and severally
agreed that all drafts, checks, notes, and bills which the bank might
discount for said corporation, and which remained due and unpaid
within one year from December 4, 1891, not exceeding $10,000 in the
aggregate, would be paid by them.   They further agreed among
themselves that they would adjust any losses growing out of said
guaranty pro rata, according to the amount of stock held by them re-

spectively.    Between December 15, 1891, and February 1, 1892, the plaintiff handled for the company six notes, aggregating $10,500, the last of which matured April 25, 1892.    On July 15, 1892, at a meeting of the company's stockholders, it was ordered that its business be closed up, and a committee was appointed for that purpose. The company thereupon quit manufacturing, and thereafter from time to time disposed of the stock on hand, and finally sold the remnants of the stock and the fixtures at auction.    Up to July 15, 1892, the plaintiff handled notes of the company aggregating $39,500, of which it then held $11,000.    After this date the company gave the plaintiff renewed notes for those held by it, without getting any fresh advance of money.    The plaintiff took the last of these notes from the company November 2, 1892, having up to that time handled 42 of the company's notes, aggregating $64,000, of which 17, aggregating $24,500, were handled by the plaintiff after the company ceased to manufacture.    From this it will be seen that the company had an active account with the bank.    On December 1, 1892, the plaintiff had 7 past-due notes of the company, amounting to $11,000, and drawing 8 per cent. interest, the legal rate allowed to national banks in Ohio where the agreement fixes that sum.    These were all renewals of prior notes which the plaintiff had discounted. The company paid $500 on these obligations, thereby reducing its indebtedness to $10,500.

The defendant urges that the guaranty was not continuing, and was exhausted with the first loan of $10,000.    The common law of Ohio bearing on the subject not having been proved (Code, § 942), it will be presumed to be that prevailing in New York, which therefore furnishes the rule for decision affecting the true construction of the contract.    Monroe v. Douglass, 5. N. Y. 447; Savage v. O'Neil, 44 N. Y. 298; Waldron v. Ritchings, 3 Daly, 288.    The guaranty is not confined to one instance, but applies to succeeding discounts during the course of a year, and is clearly a continuing one to the extent of $10,000.    Gates v. McKee, 13 N. Y. 232; Rindge v. Judson, 24 N. Y. 64; Bank v. Phelps, 16 Hun, 158; Weill v. Hecht, 14 Misc. Rep. 230, 35 N. Y. Supp. 834.    "If a party means to be surety only for a single dealing, he should take care to say so."    Merle v. Wells, 2 Camp. 413; Bank v. Phelps, supra, at page 160.    The renewing of the notes under this particular guaranty must be held to have carried with it all the benefits of the discounts which the plaintiff made on the faith of it, for it was by reason of such discounts that the plaintiff became the bona fide holder of enforceable obligations in the form of renewed notes.    In short, the result is the same as if the old notes had been paid from the proceeds of the renewed paper if the plaintiff had gone through the form of discounting it for the company.    The very purpose of the guaranty, as it recites, was to enable the company to borrow money, and to induce the plaintiff to loan to it such sums from time to time as it required.    It is unlike the guaranty of a particular note, for the renewal of such an obligation would discharge the surety.    1 Wait, Act. & Def. 582; Hubbard v. Gurney, 64 N. Y. 457.    Here no time is specified for which the notes are to run, that matter being deemed unimportant to the guar-

antors so long as the obligations given matured within one year; so that it is apparent that short renewals could not prejudice the guarantors, who, as stockholders in the company, were helping themselves by helping it. The defendant was not only a stockholder, interested and benefited by what the plaintiff did for the company, but was a director and its vice president as well, and therefore presumably cognizant of the various discounts which the guaranty was given to procure, and of the renewals made.

In Schwartz v. Hyman, 107 N. Y. 565, 14 N. E. 447, Judge Earl said: "Very little, if any, aid for the construction of this guaranty, can be derived from reported cases." This guaranty, like that in the case cited, must be construed in the light of its own peculiarities. The terms used and language employed are to have a reasonable interpretation, according to the intention of the parties as disclosed in the instrument, read in connection with the surrounding circumstances, the relations of the parties, and the purpose for which the guaranty was entered into. The contract of a surety must be construed fairly and reasonably, according to the intention of the parties; and, where the question is as to the meaning of his obligation, there is no difference between it and the contract of any other party. Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669. One of the seven notes fell due November 29, 1892, and the other six were payable "on December 1, 1892, fixed." The term "fixed," as here used, means "without grace" (Durnford v. Patterson, 7 Mart. [La.] 460); and this was undoubtedly what the parties intended when they used the expression. The guaranty is dated December 4, 1891, and the words "within one year from the date hereof" include the last day of the specified period (26 Am. & Eng. Enc. Law, 3, 7; 5 Laws R. & R. § 2495); so that, by necessary construction, the seven notes fell due within the time prescribed by the guaranty.

The defendant pleads in defense that the plaintiff renewed the seven notes which it held on December 1, 1892, by taking an omnibus note made by the company for $10,500, the aggregate amount due, and thereby extended the time of payment beyond December 4, 1892, when the year expired, whereby she was no longer chargeable under the guaranty. With respect to this it appears that the company wanted the plaintiff to carry the seven past-due notes until the former became possessed of funds to pay them. The plaintiff declined to do this, because the bank examiner might call the bank to account for carrying overdue paper, but agreed not to press its demands if the company gave a live note, enforceable at any time, that would not on its face bear evidence of past maturity; whereupon the company, in the latter part of December, 1892, gave the note of $10,500, antedated December 1, 1892, payable "on demand after date," in which it was recited that the seven past-due notes were retained by the bank as collateral security. The note was taken in that form for the reason that the bank refused to extend the time of payment, and did not intend to do so when it accepted the new note; and the next inquiry is as to the legal effect of the transaction.

According to the laws of Ohio, as proven at the trial by oral testimony, the acceptance of the $10,500 note, payable "on demand after

date," did not extend the time of payment, as it became due on the day of its date without grace; citing Insurance Co. v. Curtis, 35 Ohio St. 357. That case refers to a note payable "on demand," and as to such a note the law is the same in New York. A note payable by its terms on demand may be prosecuted immediately, the suit itself being a sufficient demand. Howland v. Edmonds, 24 N. Y. 307; Bowen v. Newell, 8 N. Y. 190; McMullen v. Rafferty, 89 N. Y. 456; 4 Am. & Eng. Enc. Law (2d Ed.) 367. Whether the addition of the words in print, "after date," would ordinarily postpone prosecution of the note until the following day, makes no difference, because the note was given long after its date, and the right to prosecute was not suspended for an instant. The $10,500 note was not intended to, and did not, pay the seven past-due notes, which, by the terms of the omnibus note, were kept alive as subsisting obligations. It did not, by operation of law, extend the time of credit, nor did it suspend or impair any remedies which the creditor had upon the seven notes; so that, in case of satisfaction by the guarantors, they might have been turned over to them in subrogation of the plaintiff's rights, with an immediate right of action against the principal debtor. Baylies, Sur. 240; Lowman v. Yates, 37 N. Y. 601; Bank v. Falconer, 1 City Ct. R. 43; Taylor v. Allen, 36 Barb. 294; Dorlon v. Christie, 39 Barb., at page 613. The mere indulgence by a creditor of the principal debtor will not discharge the surety. There must be an agreement for an extension made without the consent of the surety, upon a valid consideration, which ties the hands of the creditor, and precludes him meanwhile from proceeding to collect the debt against the principal, thereby changing the position of the surety. Powers v. Silberstein, 108 N. Y. 169, 171, 15 N. E. 185; McKecknie v. Ward, 58 N. Y., at page 547; Bank v. Ives, 17 Wend. 501; Lowman v. Yates, 37 N. Y. 601, 604; Baylies, Sur. 240; Bank v. Sleight, 1 App. Div. 189, 37 N. Y. Supp. 155; Norton, Bills & N. 289; Doig v. Haverly, 92 Hun, 176, 179, 37 N. Y. Supp. 455; Bank v. Fulton, 1 Week. Notes, Pa., Dec. 8, 1894; Morgan v. Smith, 70 N. Y. 537. The taking by a creditor of a new obligation for a pre-existing debt does not discharge the latter unless it is so agreed; and the intent that a new security shall extinguish the original indebtedness must be proved, or else it will be regarded as still subsisting, and the new obligation will be deemed to have been taken as security only. Flower v. Lance, 59 N. Y., at page 608. All the stockholders have paid, except the defendant and one Bishop, the latter of whom is insolvent; and the defendant, with knowledge of all the facts, has expressed her willingness to pay her share if 'not unduly urged for the money, thus recognizing her liability. She also told the witness Parker (who explained to her the situation) that, when the amount required was figured up, she would send her portion of the money. These are circumstances to be considered. Brandt, Sur. § 347. The other guarantors paid on account, before suit brought, sufficient to reduce the debt to $3,000, to recover which balance the action was brought. After suit they paid this balance, and prosecuted the action in the name of the plaintiff, under section 756 of the Code, as construed in Granite Co. v. French, 3 Civ. Proc. R. 56,

affirmed Id. 445, 12 Daly, 228. The instant the defendant's co-guarantors paid her quota to the plaintiff, they became entitled to contribution therefor. They became subrogated to the rights of the plaintiff as a creditor, and succeeded to its remedies against the principal and all others liable for the debt. Baylies, Sur. (1st Ed.) pp. 317, 356, 358; Bisp. Eq. (3d Ed.) 335; 3 Pom. Eq. Jur. (1st Ed.) p. 470; Townsend v. Whitney, 75 N. Y. 425; Cuyler v. Ensworth, 6 Paige, 32; Cheesebrough v. Millard, 1 Johns. Ch. 413; Sheld. Subr. §§ 1, 181, 701.

The defendant's co-guarantors paid the plaintiff, for principal and interest on the guaranty, one-third (the capital stock of the company being $30,000, of which defendant held $10,000), making her liability $3,014.21, which, with interest at 6 per cent., amounts to $3,476.-11. The demand for judgment herein is for $3,000, with interest from December 4, 1892, making $3,585, and therefore slightly exceeds the sum due the co-guarantors, which is the extent of the defendant's present liability. It follows that there must be judgment in favor of the plaintiff for the aforesaid $3,476.11, with costs.